APPEAL,CLOSED,JURY,TYPE−E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:16−cv−01606−ABJ</u>

SMITH et al v. CLINTON
Assigned to: Judge Amy Berman Jackson
Cause: 28:1332 Diversity−Libel,Assault,Slander

Date Filed: 08/08/2016
Date Terminated: 05/31/2017
Jury Demand: Plaintiff
Nature of Suit: 320 Assault Libel &
Slander
Jurisdiction: Diversity

**Plaintiff**

**PATRICIA SMITH**                    represented by  **Larry E. Klayman**
                                                    FREEDOM WATCH, INC.
                                                    2020 Pennsylvania Avenue, NW
                                                    Suite 345
                                                    Washington, DC 20006
                                                    (310) 595−0800
                                                    Fax: (310) 275−4963
                                                    Email: leklayman@gmail.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

**CHARLES WOODS**                     represented by  **Larry E. Klayman**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**HILLARY RODHAM CLINTON**            represented by  **Amy Mason Saharia**
                                                    WILLIAMS & CONNOLLY LLP
                                                    725 12th St. NW
                                                    Washington, DC 20005
                                                    (202) 434−5847
                                                    Fax: (202) 434−5029
                                                    Email: asaharia@wc.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **David Evan Kendall**
                                                    WILLIAMS & CONNOLLY LLP
                                                    725 12th St. NW
                                                    Washington, DC 20005
                                                    (202) 434−5145
                                                    Fax: (202) 434−5029

1

Email: dkendall@wc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katherine Marie Turner**
WILLIAMS & CONNOLLY LLP
725 12th St. NW
Washington, DC 20005
(202) 434−5487
Fax: (202) 434−5029
Email: kturner@wc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen L. Wohlgemuth**
WILLIAMS & CONNOLLY LLP
725 12th St. NW
Washington, DC 20005
(202) 434−5390
Fax: (202) 434−5029
Email: swohlgemuth@wc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**UNITED STATES OF AMERICA**         represented by   **Elliott M. Davis**
U.S. DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 888
Washington, DC 20044
(202) 616−4206
Fax: (202) 616−5200
Email: elliott.m.davis@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/08/2016 | 1 | | COMPLAINT against HILLARY RODHAM CLINTON with Jury Demand ( Filing fee $ 400 receipt number 0090−4631106) filed by PATRICIA SMITH, CHARLES WOODS. (Attachments: # 1 Summons, # 2 Civil Cover Sheet, # 3 Notice to Counsel/Party Notice of Related Case)(Klayman, Larry) (Entered: 08/08/2016) |
| 08/08/2016 | 2 | | NOTICE OF RELATED CASE by PATRICIA SMITH, CHARLES WOODS. Case related to Case No. 14−1242. (jf) (Entered: 08/09/2016) |
| 08/08/2016 | | | Case Assigned to Judge Royce C. Lamberth. (md) (Entered: 08/09/2016) |
| 08/09/2016 | 3 | | SUMMONS Issued Electronically as to HILLARY RODHAM CLINTON. (Attachments: # 1 Notice of Consent) (md) (Entered: 08/09/2016) |

| 08/09/2016 | | | SUMMONS Not Issued as to non−party U.S. Attorney, U.S. Attorney General. (md) (SUMMONS WERE NOT FILED AT THE TIME COMPLAINT WAS FILED) (Entered: 08/09/2016) |
|---|---|---|---|
| 08/09/2016 | 4 | | REQUEST FOR SUMMONS TO ISSUE *For U.S. Attorney for District of Columbia* filed by PATRICIA SMITH, CHARLES WOODS.(Klayman, Larry) (Entered: 08/09/2016) |
| 08/09/2016 | 5 | | REQUEST FOR SUMMONS TO ISSUE *U.S. Attorney General* filed by PATRICIA SMITH, CHARLES WOODS.(Klayman, Larry) (Entered: 08/09/2016) |
| 08/09/2016 | 6 | | SUMMONS (2) Issued Electronically as to U.S. Attorney and U.S. Attorney General (Attachments: # 1 Consent Forms)(zrdj) (Entered: 08/09/2016) |
| 09/08/2016 | 7 | | MOTION for Entry of Default by PATRICIA SMITH, CHARLES WOODS (Klayman, Larry) Modified on 9/9/2016 (zrdj). (Entered: 09/08/2016) |
| 09/08/2016 | 8 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. HILLARY RODHAM CLINTON served on 8/11/2016, answer due 9/1/2016 (See docket entry 7 , Exhibit 2 to view document) (zrdj) (Entered: 09/09/2016) |
| 09/09/2016 | 9 | | VACATED PURSUANT TO MINUTE ORDER FILED ON 10/19/2016.....Clerk's ENTRY OF DEFAULT as to HILLARY RODHAM CLINTON (zrdj) Modified on 10/19/2016 (jf). (Entered: 09/09/2016) |
| 09/15/2016 | 10 | | NOTICE of Appearance by David Evan Kendall on behalf of HILLARY RODHAM CLINTON (Kendall, David) (Entered: 09/15/2016) |
| 09/15/2016 | 11 | | NOTICE of Appearance by Katherine Marie Turner on behalf of HILLARY RODHAM CLINTON (Turner, Katherine) (Entered: 09/15/2016) |
| 09/15/2016 | 12 | | NOTICE of Appearance by Amy Mason Saharia on behalf of HILLARY RODHAM CLINTON (Saharia, Amy) (Entered: 09/15/2016) |
| 09/15/2016 | 13 | | RESPONSE re 2 Notice of Related Case filed by HILLARY RODHAM CLINTON. (Attachments: # 1 Text of Proposed Order)(Kendall, David) (Entered: 09/15/2016) |
| 09/15/2016 | 14 | | MOTION to Vacate 9 Clerk's Entry of Default by HILLARY RODHAM CLINTON (Attachments: # 1 Text of Proposed Order)(Kendall, David) (Entered: 09/15/2016) |
| 09/20/2016 | 15 | | REPLY re 13 Response to Document filed by PATRICIA SMITH, CHARLES WOODS. (Klayman, Larry) (Entered: 09/20/2016) |
| 09/22/2016 | 16 | | Memorandum in opposition to re 14 MOTION to Vacate 9 Clerk's Entry of Default filed by PATRICIA SMITH, CHARLES WOODS. (Klayman, Larry) (Entered: 09/22/2016) |
| 09/22/2016 | 17 | | REPLY re 13 Response to Document filed by HILLARY RODHAM CLINTON. (Kendall, David) (Entered: 09/22/2016) |
| 09/23/2016 | 18 | | REPLY re 17 Reply to Document filed by PATRICIA SMITH, CHARLES WOODS. (Klayman, Larry) (Entered: 09/23/2016) |
| 09/29/2016 | 19 | | |

| | | |
|---|---|---|
| | | REPLY to opposition to motion re 14 MOTION to Vacate 9 Clerk's Entry of Default filed by HILLARY RODHAM CLINTON. (Kendall, David) (Entered: 09/29/2016) |
| 10/10/2016 | 20 | MOTION for Default Judgment as to *Defendant Hillary Clinton* by PATRICIA SMITH, CHARLES WOODS (Attachments: # 1 Exhibit 1)(Klayman, Larry) (Entered: 10/10/2016) |
| 10/18/2016 | 21 | ORDER re 13 sustaining Defendant's Objection to Related Case Designation. Case transferred to the Calendar and Case Management Committee. Signed by Judge Royce C. Lamberth on 10/18/2016. (lcrcl2) (Entered: 10/18/2016) |
| 10/18/2016 | 22 | Case randomly reassigned to Judge Amy Berman Jackson as not related. Judge Royce C. Lamberth no longer assigned to the case. (ztnr) (Entered: 10/18/2016) |
| 10/19/2016 | | MINUTE ORDER granting defendant's 14 motion to vacate the Clerk's Entry of Default. Whether or not the defendant was served with process in accordance with applicable state law, defendant is now on notice of this lawsuit, and counsel entered an appearance on her behalf on September 15, 2016. Given the "strong policies favoring the resolution of genuine disputes on the merits," Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980), the Court will vacate the 9 Clerk's Entry of Default, and it will deny as moot plaintiffs' 20 motion for default judgment. SO ORDERED. Signed by Judge Amy Berman Jackson on 10/19/2016. (lcabj3) (Entered: 10/19/2016) |
| 10/21/2016 | 23 | MOTION to Substitute *(Partial)* by UNITED STATES OF AMERICA (Attachments: # 1 Exhibit A − Westfall Certification, # 2 Text of Proposed Order)(Davis, Elliott) (Entered: 10/21/2016) |
| 10/21/2016 | 24 | MOTION to Dismiss , MOTION to Dismiss for Lack of Jurisdiction by UNITED STATES OF AMERICA (Attachments: # 1 Declaration of Megan Grimball, # 2 Declaration of Daniel F. Van Horn, # 3 Text of Proposed Order)(Davis, Elliott) (Entered: 10/21/2016) |
| 10/21/2016 | 25 | NOTICE of Appearance by Elliott M. Davis on behalf of UNITED STATES OF AMERICA (Davis, Elliott) (Entered: 10/21/2016) |
| 10/21/2016 | | MINUTE ORDER. In light of the 23 government's motion for partial substitution under the Westfall Act, Secretary Clinton shall answer or otherwise respond to Counts II, III, V, and VI of the 1 complaint by November 14, 2016. SO ORDERED. Signed by Judge Amy Berman Jackson on 10/21/2016. (lcabj3) (Entered: 10/21/2016) |
| 11/11/2016 | 26 | MOTION for Extension of Time to *Nunc Pro Tunc to Respond to the United States' Motion to Dismiss* by PATRICIA SMITH, CHARLES WOODS (Attachments: # 1 Text of Proposed Order)(Klayman, Larry) (Entered: 11/11/2016) |
| 11/14/2016 | | MINUTE ORDER granting plaintiffs' 26 motion for an extension of time. Plaintiffs shall file their opposition to the 23 motion for partial substitution and 24 motion to dismiss by November 17, 2016. The government's reply shall be filed by November 28, 2016. Moving forward, any motion to extend a deadline filed by any party must be filed two business days before the date to be extended. SO ORDERED. Signed by Judge Amy Berman Jackson on 11/14/2016. (lcabj3) (Entered: 11/14/2016) |

| 11/14/2016 | 27 | | NOTICE of Appearance by Stephen L. Wohlgemuth on behalf of HILLARY RODHAM CLINTON (Wohlgemuth, Stephen) (Entered: 11/14/2016) |
|---|---|---|---|
| 11/14/2016 | 28 | | MOTION to Dismiss by HILLARY RODHAM CLINTON (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Text of Proposed Order)(Kendall, David) (Entered: 11/14/2016) |
| 11/17/2016 | 29 | | ENTERED IN ERROR.....RESPONSE re 24 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction , 23 MOTION to Substitute *(Partial)* filed by PATRICIA SMITH, CHARLES WOODS. (Klayman, Larry) Modified on 11/18/2016 (znmw). (Entered: 11/17/2016) |
| 11/18/2016 | | | NOTICE OF ERROR re 29 Response to motion; emailed to leklayman@gmail.com, cc'd 8 associated attorneys — The PDF file you docketed contained errors: 1. Incorrect header/caption/case number, 2. Please refile document, 3. Entered in Error; Incorrect Case Number; Please refile. (znmw, ) (Entered: 11/18/2016) |
| 11/18/2016 | 30 | | RESPONSE re 24 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction , 23 MOTION to Substitute *(Partial)* filed by PATRICIA SMITH, CHARLES WOODS. (Klayman, Larry) (Entered: 11/18/2016) |
| 11/21/2016 | 31 | | Consent MOTION for Extension of Time to File Response/Reply as to 28 MOTION to Dismiss by PATRICIA SMITH, CHARLES WOODS (Klayman, Larry) (Entered: 11/21/2016) |
| 11/23/2016 | | | MINUTE ORDER. Plaintiffs' 31 motion for an extension of time to oppose the 28 motion to dismiss is GRANTED, provided that plaintiffs utilize the additional time to review and edit the pleading carefully to ensure that the unnecessarily vituperative and sarcastic tone of the previous pleading 30 is eliminated. Plaintiff's response to Defendant Clinton's 28 Motion is now due by December 8, 2016. SO ORDERED. Signed by Judge Amy Berman Jackson on 11/23/2016.(lcabj3) Modified on 11/23/2016 to reflect the actual due date of Plaintiff's response. (jth) (Entered: 11/23/2016) |
| 11/28/2016 | 32 | | REPLY to opposition to motion re 23 MOTION to Substitute *(Partial)* filed by UNITED STATES OF AMERICA. (Davis, Elliott) (Entered: 11/28/2016) |
| 11/28/2016 | 33 | | REPLY to opposition to motion re 24 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction filed by UNITED STATES OF AMERICA. (Davis, Elliott) (Entered: 11/28/2016) |
| 12/08/2016 | 34 | | RESPONSE re 28 MOTION to Dismiss filed by PATRICIA SMITH, CHARLES WOODS. (Klayman, Larry) (Entered: 12/08/2016) |
| 12/15/2016 | 35 | | REPLY to opposition to motion re 28 MOTION to Dismiss filed by HILLARY RODHAM CLINTON. (Kendall, David) (Entered: 12/15/2016) |
| 05/26/2017 | 36 | | ORDER. Pursuant to Federal Rules of Civil Procedure 12 and 58 and for the reasons stated in the accompanying memorandum opinion, the United States' 23 Motion for Partial Substitution is GRANTED. The United States is substituted as a defendant with respect to Counts I and IV, and with respect to Counts V and VI to the extent that those counts relate to actions that Secretary Clinton took as Secretary of State. The United States' 24 motion to dismiss is GRANTED. Counts I and VI are dismissed without prejudice, and Counts V and VI are dismissed without prejudice to the extent that those counts relate to actions that |

| | | | |
|---|---|---|---|
| | | | Secretary Clinton took as Secretary of State. Secretary Clinton's 28 motion to dismiss is GRANTED. Counts II and III are dismissed in their entirety, and Counts V and VI are dismissed to the extent that those counts are premised on the alleged defamation. See Order for complete details. SO ORDERED. Signed by Judge Amy Berman Jackson on 5/26/2017. (lcabj3) (Entered: 05/26/2017) |
| 05/26/2017 | 37 | | MEMORANDUM OPINION. Signed by Judge Amy Berman Jackson on 5/26/2017. (lcabj3) (Entered: 05/26/2017) |
| 06/01/2017 | 38 | 7 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 37 Memorandum & Opinion, 36 Order on Motion to Substitute,,,,, Order on Motion to Dismiss,,,,, Order on Motion to Dismiss/Lack of Jurisdiction,,,,,,,,, by PATRICIA SMITH, CHARLES WOODS. Filing fee $ 505, receipt number 0090−4974508. Fee Status: Fee Paid. Parties have been notified. (Klayman, Larry) (Entered: 06/01/2017) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PATRICIA SMITH and CHARLES
WOODS

                Plaintiffs,

      v.

HILLARY CLINTON,

Defendant

Civil Action No.  1:16-cv-01606

## PLAINTIFFS' NOTICE OF APPEAL

NOTICE is hereby given that Plaintiffs Patricia Smith and Charles Woods ("Plaintiffs")

appeal to the U.S. Court of Appeals for the District of Columbia Circuit from the Order granting

the United States' Motion for Partial Substitution of the United States, the United States' Motion

to Dismiss, and Defendant Hillary Clinton's Motion to Dismiss, Exhibit A, and Memorandum

Opinion in support thereof, Exhibit B, and all other orders and rulings averse to Plaintiff in this

case.

Dated: June 1, 2017                Respectfully submitted,

                                 */s/ Larry Klayman*
                                 Larry Klayman, Esq.
                                 D.C. Bar No. 334581
                                 Freedom Watch, Inc.
                                 2020 Pennsylvania Avenue N.W.
                                 Suite 345
                                 Washington, D.C. 20006
                                 (310) 595-0800
                                 leklayman@gmail.com

**CERTIFICATE OF SERVICE**

I, Larry Klayman, counsel for Plaintiffs hereby certify that on this day, June 1, 2017, a

copy of the foregoing was filed via this Court's ECF system and served upon all parties and/or

counsel of record.

> */s/ Larry Klayman*
> Larry Klayman

2

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>PATRICIA SMITH, <em>et al.</em></td><td>)<br>)</td><td></td></tr>
<tr><td style="padding-left:3em">Plaintiffs,</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td style="padding-left:3em">v.</td><td>)</td><td>Civil Action No. 16-1606 (ABJ)</td></tr>
<tr><td>HILLARY RODHAM CLINTON,</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td style="padding-left:3em">Defendant.</td><td>)<br>)<br>)</td><td></td></tr>
</table>

## ORDER

Pursuant to Federal Rules of Civil Procedure 12 and 58, and for the reasons stated in the accompanying memorandum opinion, it is hereby

**ORDERED** that the United States' Motion for Partial Substitution of the United States [Dkt. # 23] is **GRANTED**.  The United States is substituted as a defendant with respect to Counts I and IV, and with respect to Counts V and VI to the extent that those counts relate to actions that Secretary Clinton took as Secretary of State.  It is

**FUTHER ORDERED** that the United States' Motion to Dismiss [Dkt. # 24] is **GRANTED**.  Counts I and IV are dismissed without prejudice in their entirety, and Counts V and VI are dismissed without prejudice to the extent that those counts relate to actions that Secretary Clinton took as Secretary of State.  It is

**FURTHER ORDERED** that Secretary Clinton's motion to dismiss [Dkt. # 28] is

**GRANTED**.  Counts II and III are dismissed in their entirety, and Counts V and VI are dismissed

to the extent that those counts are premised on the alleged defamation.

This is a final appealable order.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE:  May 26, 2017

2

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

)
PATRICIA SMITH, *et al.*,                    )
)
            Plaintiffs,                       )
)
    v.                                        )        Civil Action No. 16-1606 (ABJ)
)
HILLARY RODHAM CLINTON,                       )
)
            Defendant.                        )
                                              )

## MEMORANDUM OPINION

Plaintiffs Patricia Smith and Charles Woods have brought this action against the former Secretary of State, Hillary Rodham Clinton ("Secretary Clinton"), alleging that Secretary Clinton's use of a private email server caused the death of their sons Sean Smith and Tyrone Woods. Plaintiffs' theory is that Secretary Clinton's use of the private email account when she was serving as Secretary of State exposed confidential information about plaintiffs' relatives to the terrorists who ultimately took their lives in Benghazi, Libya in September of 2012. *See* Compl. [Dkt. # 1] ¶¶ 26–28, 44–47. Plaintiffs also allege that Secretary Clinton defamed them and placed them in a false light when, as a candidate for the office of President of the United States, she disputed their accounts of conversations that she had with them about the circumstances that led to attack in Benghazi. *Id.* ¶¶ 33–42. Finally, plaintiffs allege that Secretary Clinton's conduct – both as Secretary of State and later on the campaign trail – intentionally and negligently caused them to suffer emotional distress. *Id.* ¶¶ 50–56.

The United States has moved to substitute itself as the defendant for any actions that Secretary Clinton took as Secretary of State. In that capacity, it moves to dismiss the claims for wrongful death (Count I) and negligence (Count IV) in their entirety, along with those portions of

the claims for intentional and negligent infliction of emotional distress (Counts V and VI, respectively) that are premised on actions Secretary Clinton took as Secretary of State.

The law allows the United States to substitute itself as the defendant where a lawsuit challenges acts taken by a government official who was acting in the scope of his or her employment at the time of the alleged torts. To resolve the question of whether Secretary Clinton was acting in the scope of her employment, the relevant inquiry is not whether her use of the private email server was lawful or unlawful. Instead, the only issue to be resolved is whether the Secretary's communication with State Department personnel concerning State Department business through that means fell within the scope of Secretary Clinton's employment. Because the Court finds that Secretary Clinton was acting in the scope of her employment when she transmitted the emails that are alleged to give rise to her liability, the motion to substitute will be granted. And because plaintiffs failed to raise their claims with the State Department before bringing suit as is legally required, the government's motion to dismiss the counts against the United States will be granted.

In addition, Secretary Clinton has moved to dismiss the defamation and false light claims (Counts II and III), as well as the intentional and negligent infliction of emotional distress claims insofar as they are premised on actions she took after she left office (Count V and VI). Plaintiffs allege that Secretary Clinton lied to them when she allegedly told them that it was a YouTube video that prompted the attack on the consulate in Benghazi. *See* Compl. ¶ 24. They further claim that when Secretary Clinton – then candidate Clinton – was subsequently asked about plaintiffs' allegation that she had lied, she defamed plaintiffs or put them in a false light when she disputed their account of their conversation with her. *See id.* ¶ 23. But because plaintiffs have not stated a

2

claim for defamation or false light, or for intentional infliction of emotional distress, Secretary

Clinton's personal motion to dismiss will be granted as well.

The untimely death of plaintiffs' sons is tragic, and the Court does not mean to minimize the unspeakable loss that plaintiffs have suffered in any way. But when one applies the appropriate legal standards, it is clear that plaintiffs have not alleged sufficient facts to rebut the presumption that Secretary Clinton was acting in her official capacity when she used her private email server to communicate with State Department personnel about State Department business, and that they have not stated claims that Secretary Clinton defamed them, put them in a false light, or intentionally inflicted emotional distress. For those reasons, the case will be dismissed. Nothing about this decision should be construed as making any determination or expressing any opinion about the propriety of the use of the private email server or the content or accuracy of the statements made by the Secretary to the family members or to anyone else in the days following the Benghazi attack.

## BACKGROUND

For purposes of this motion, the Court must assume the facts alleged by the plaintiffs to be true.

From 2009 to 2013, Secretary Clinton served as the United States Secretary of State. Compl. ¶ 8. During her tenure – as the world has come to know – she "utilized a private e-mail server to conduct official government business." *Id.* ¶ 9. Plaintiffs allege that Secretary Clinton used the private server to send and receive "thousands of e-mails regarding matters of national

3

security, including information that has been categorized as 'top secret,' 'secret,' and 'confidential.'" *Id.*

Plaintiffs specifically allege that Secretary Clinton used her private e-mail server to "send and receive information about the location of Ambassador Christopher Stevens . . . and other government operations in Benghazi, Libya. Compl. ¶ 15.[1]  From there, they posit that the email server was hacked by a number of foreign countries, that terrorists thereby obtained the e-mails, and that the terrorists used them to "plan, orchestrate, and carry out the horrific and devastating

---

1    For purposes of this motion, the Court must accept the factual allegations set forth in the complaint as true.  But the recitation of those allegations in this opinion should not be viewed as a finding that Secretary Clinton was in fact communicating about where Ambassador Stevens could be found.  In support of this allegation, the complaint cites a Breitbart article which contains a number of emails.  *See* Compl. at 2 n.1, citing Aaron Klein, *Hillary Emails Betrayed Whereabouts of Murdered Ambassador Chris Stevens*, Breitbart (Mar. 1, 2016), http://www.breitbart.com/national-security/2016/03/01/hillary-emails-betrayed-whereabouts-of-murdered-ambassador-chris-stevens/.  However, the emails – from March and April of 2011 – all predate Stevens's service as the Ambassador, which began in March 2012, *see* Nomination of J. Christopher Stevens, https://www.congress.gov/nomination/112th-congress/1233, they discuss his plans in his role as the U.S. envoy to the Libyan rebels, and none divulge his specific location in any event.

4

attack on the American diplomatic compound in Benghazi, Libya on September 11, 2012, resulting

in the death of four Americans, including Sean Smith and Tyrone Woods." *Id.* ¶¶ 15–16.[2]

According to plaintiffs, on the day of the attack, and in the days that followed, Secretary

Clinton attempted to blame an anti-Muslim YouTube video for inciting the violence. Compl. ¶ 18.

In particular, on September 12, 2012, when Secretary Clinton gave public remarks about the attack,

she said: "Some have sought to justify this vicious behavior, along with the protest that took place

at our Embassy in Cairo yesterday, as a response to inflammatory material posted on the internet."

*Id.* And the complaint states that, two days after the attack, when Secretary Clinton met with the

families of the four Americans who were killed, she "lied to Plaintiffs and told Plaintiffs that the

Benghazi attack was the result of the anti-Muslim YouTube video that had been posted online,"

and she promised the families that the "creator of the video would be arrested." *Id.* ¶ 19.

According to the complaint, plaintiff Woods "contemporaneously recorded this September 14,

2012 interaction with [Secretary] Clinton by writing in his diary . . . 'I gave Hillary a hug and

_____

2       Plaintiffs allege that the private email server was hacked by state actors from Russia, Iran, China, South Korea, and Germany, and they cite a news article to support that factual assertion. Compl. ¶¶ 13 & n.6, citing Josh Gerstein & Rachel Bade, *Clinton Server Faced Hacking from China, South Korea, and Germany*, Politico (Oct. 8, 2015), http://www.politico.com/ story/2015/10/hillary-clinton-email-server-hacked-china-south-korea-germany-214546. But the article mentions only China, South Korea, and Germany, and more important, it states – in the first sentence – that the hacking attempts from those three countries occurred "after [Clinton] stepped down in 2013." Meanwhile, plaintiffs point to nothing – not any of the emails that have been made public or any Congressional reports or news accounts – to establish any of the other links in the alleged chain of events, i.e., that "Islamic terrorists obtained the information sent and received by [Secretary] Clinton . . . and used it to plan, orchestrate, and carry out the horrific and devastating attack." Compl. ¶ 16. So while the Court must accept the complaint on its face at this juncture, there is nothing on the face of the complaint that reveals the evidentiary support for the conclusory assertion that there was a causal connection between the Secretary's use of the private email server – even if it was ill-advised – and the tragic events in Benghazi.

5

shook her hand, and she said we are going to have the film maker arrested who was responsible

for the death of my son.'" *Id.* ¶ 20.

The narrative in the complaint then jumps forward more than three years, and it recounts

various statements that Secretary Clinton made during the Presidential election season in late 2015

and early 2016. Secretary Clinton has long maintained that she never told plaintiffs that the

Benghazi attack was caused by the YouTube video; plaintiffs allege that when she advanced those

denials, Secretary Clinton lied about their September 2012 interaction and thereby defamed them.

Paragraph 23 of the complaint recounts four specific instances of alleged defamation:

- **December 6, 2015 interview with George Stephanopoulos of ABC:**
  Stephanopoulos asked Clinton, "[d]id you tell them it was about the film?" Compl.
  ¶ 23(a). Secretary Clinton replied:

  > No. You know, look I understand the continuing grief at the loss
  > that parents experienced with the loss of these four brave
  > Americans. And I did testify, as you know, for 11 hours. And I
  > answered all of these questions. Now, I can't – I can't help it the
  > people think there has to be something else there. I said very clearly
  > there had been a terrorist group that had taken responsibility on
  > Facebook between the time that, I – you know, when I talked to my
  > daughter, that was the latest information; we were giving it
  > credibility. And then we learned the next day it wasn't true. In fact,
  > they retracted it. This was a fast-moving series of events in the fog
  > of war and I think most Americans understand that.

  *Id.*

- **December 30, 2015 meeting with the Conway Daily Sun Editorial Board:** The
  complaint alleges that Conway Daily Sun columnist Tom McLaughlin brought up
  the ABC interview and asked: "Somebody is lying. Who is it?" Compl. ¶ 23(b).
  Secretary Clinton responded: "Not me, that's all I can tell you." *Id.*

- **March 9, 2016, during the Democratic Presidential Debate**. Secretary Clinton
  was asked about plaintiff Smith's allegation that Secretary Clinton lied to her by
  blaming the Benghazi attack on the YouTube video. Compl. ¶ 23(c). Secretary
  Clinton responded:

  > I feel a great deal of sympathy for the families of the four brave
  > Americans that we lost at Benghazi, and I certainly can't even

imagine the grief that she has for losing her son, but she's wrong. She's absolutely wrong.

*Id.*

- **July 31, 2016 interview with Chris Wallace of Fox News**. In response to a question about "why [plaintiffs] would make . . . up" their claims, Secretary Clinton said:

> Chris, my heart goes out to both of them. Losing a child under any circumstances, especially in this case, two State Department employees, extraordinary men both of them, two CIA contractors gave their lives protecting our country, our values. I understand the grief and the incredible sense of loss that can motivate that. As other members of families who lost loved ones have said, that's not what they heard. I don't hold any ill feeling for someone who in that moment may not fully recall everything that was or wasn't said.

Compl. ¶ 23(d).[3]

Plaintiffs make the conclusory assertion that Secretary Clinton "defamed [p]laintiffs by either directly calling them liars, or by strongly implying that they are liars." Compl. ¶ 23.

Plaintiffs filed this six-count complaint on August 8, 2016. In Count I, plaintiffs bring a claim for wrongful death, alleging that "[t]he deaths of Sean Smith and Tyrone Woods were directly and proximately caused by the negligent and reckless actions of [Secretary] Clinton, who used her private email server to send and receive secret, confidential, and classified government information that compromised the location of Ambassador Christopher Stevens and thus the U.S. Department of State . . . in Benghazi, Libya." Compl. ¶ 26. In Count II, plaintiffs allege that the four statements Secretary Clinton made during the campaign in 2015 and 2016 were defamatory, *id.* ¶¶ 33–37, and in Count III, they allege that those four statements placed them in a false light. *Id.* ¶¶ 39–42. In Count IV, plaintiffs allege that Secretary Clinton acted negligently in the handling

---

3     *See also* Compl. ¶ 23(d) n.14, citing Tommy Christopher, *Chris Wallace Grills Hillary Clinton About Benghazi Parents' Claims She Blamed Video*, Mediaite (July 31, 2016), http://www.mediaite.com/tv/fox-news-chris-wallace-grills-hillary-clinton-about-benghazi-parents-claims-she-blamed-video/.

of her private email server, and that her negligence directly and proximately caused the deaths of Sean Smith and Tyrone Woods. *Id.* ¶¶ 44–48. In Count V, plaintiffs allege that Secretary Clinton committed the tort of intentional infliction of emotional distress (1) when she "used her private email server to send and receive confidential and classified government information," and (2) in defaming and holding plaintiffs in a false light during the campaign. *Id.* ¶¶ 50–52. And in Count VI, plaintiffs allege that Secretary Clinton negligently inflicted emotional distress when she (1) was "negligent and reckless" in her "handling of classified government information," and (2) when she defamed plaintiffs and held them in a false light. *Id.* ¶¶ 54–56.[4]

On October 21, 2016, the United States filed a motion pursuant to the Westfall Act, 28 U.S.C. § 2679, arguing that the United States should be substituted as a defendant for all counts that arose out of Secretary Clinton's actions as Secretary of State. U.S. Mot. for Partial Substitution [Dkt. # 23] ("U.S. Mot. to Substitute") at 3–4. Accordingly, the United States has requested that Counts I and IV be deemed to be against the United States in their entirety, and that Counts V and VI should be deemed to be against the United States insofar as they allege wrongdoing arising out of events that occurred when Secretary Clinton served as an officer of the United States. *Id.* Based on that substitution, the United States filed a motion to dismiss Counts I and IV in their entirety, and to dismiss Counts V and VI in part, for lack of subject matter jurisdiction. United States Mot. to Dismiss [Dkt. # 24] ("U.S. MTD") at 1–2. The government

---

4    Plaintiffs have since withdrawn the negligent infliction of emotional distress count. *See* Pl.'s Mem. of Law in Opp. to Def. Clinton's Mot. [Dkt. # 34] at 3 n.2.

8

also moved to dismiss for lack of personal jurisdiction due to a failure to properly serve Secretary Clinton or the United States.  *Id.* at 3–4.

On November 14, 2016, Secretary Clinton filed a separate motion to dismiss plaintiffs' claims based on her conduct as a Presidential candidate for defamation, false light, intentional infliction of emotional distress, and negligent infliction of emotional distress, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Def. Hillary Rodham Clinton's Mot. to Dismiss [Dkt. # 28] ("Clinton MTD").

Plaintiffs opposed the motions filed by the United States, Pls.' Opp. to the U.S. Mot. to Substitute & U.S. MTD [Dkt. # 30] ("Pls.' Opp. to U.S. Mots."), and they opposed Secretary Clinton's motion to dismiss as well.  Pl.'s Mem. of Law in Opp. to Clinton MTD [Dkt. # 34] ("Pls.' Opp. to Clinton MTD").  The United States replied in support of its motions, Reply Mem. in Further Supp. of U.S. Mot. to Substitute [Dkt. # 32] ("U.S. Substitution Reply"); U.S. Reply Mem. in Further Supp. of U.S. MTD [Dkt. # 33] ("U.S. MTD Reply"), and Secretary Clinton replied in support of her motion to dismiss as well.  Def. Clinton's Reply in Supp. of Clinton MTD [Dkt. # 35] ("Clinton MTD Reply").

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those

9

inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

## I. Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm.*, *Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II. Service of Process

Under Rule 12(b)(5), plaintiffs bears the burden to establish that they have properly effectuated service. *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987). When a defendant

10

challenges the sufficiency of service, the plaintiff "must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Id.* (citations omitted). If a plaintiff does not meet his burden to show proper service of process, the Court may dismiss the complaint without prejudice for ineffective service of process. *See* Fed. R. Civ. P. 12(b)(5); *Simpkins v. D.C. Government*, 108 F.3d 366, 368–69 (D.C. Cir. 1997).

### III.    Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial

11

notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St.*

*Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

**I.      The United States will be substituted as the defendant pursuant to the Westfall Act.**

The Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C.

§ 2679, commonly referred to as the Westfall Act, "accords federal employees absolute immunity

from common-law tort claims arising out of acts they undertake in the course of their official

duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007).  The purpose of the Westfall Act "is to relieve

covered employees from the cost and effort of defending [a] lawsuit, and to place those burdens

on the Government's shoulders." *Wuterich v. Murtha*, 562 F.3d 375, 380 (D.C. Cir. 2009), quoting

*Osborn*, 549 U.S. at 252.

"When a federal employee is sued for wrongful or negligent conduct," the Attorney

General or his delegate may certify that the employee "was acting within the scope of his office or

employment at the time of the incident out of which the claim arose." *Osborn*, 549 U.S. at 229–

30, quoting 28 U.S.C. § 2679(d)(1)–(2).  "Upon the Attorney General's certification, the employee

is dismissed from the action, and the United States is substituted as the defendant in place of the

employee." *Id.* at 230.  "Thereafter, the suit is governed by the Federal Tort Claims Act ('FTCA')

and is subject to all of the FTCA's exceptions for actions in which the Government has not waived

sovereign immunity." *Wuterich*, 562 F.3d at 380, citing *Osborn*, 549 U.S. at 230.  Unless one of

the exceptions to the waiver of sovereign immunity set forth in the FTCA applies, the Westfall Act

certification "converts the tort suit into a FTCA action over which the federal court lacks subject

matter jurisdiction and has the effect of altogether barring plaintiff's case." *Id.*; *see also Majano*

*v. United States*, 469 F.3d 138, 139 (D.C. Cir. 2006).

12

But a district court should not treat a Westfall Act certification as conclusive evidence, and a plaintiff may challenge "the government's scope of employment determination." *Stokes v. Cross*, 327 F.3d 1210, 1213 (D.C. Cir. 2003), citing *Gutierrez de Martinez v. Lamango*, 515 U.S. 417, 420 (1995). If a plaintiff mounts that challenge, the certification "constitute[s] *prima facie* evidence that the employee was acting within the scope of his employment," *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006) (per curiam), and the plaintiff must rebut that presumption by alleging "sufficient facts that, taken as true, would establish that the defendants' actions exceeded the scope of their employment." *Stokes*, 327 F.3d at 1215. The court should adhere to the teachings of *Iqbal* and *Twombly* in determining whether the plaintiff has met his or her burden to rebut the presumption. *Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013). Only if the plaintiff satisfies that burden will he or she, "if necessary, attain 'limited discovery' to resolve any factual disputes over jurisdiction." *Id.* at 220–21, quoting *Wuterich*, 562 F.3d at 381.

Here, defendants have filed a Westfall Act certification from James G. Touhey, Jr., the Director of the Torts Branch, Civil Division, Department of Justice. Certification, Ex. A to U.S. Mot. to Substitute [Dkt. # 23-1]. Touhey certifies that Secretary Clinton "was acting within the scope of her office as the Secretary of State of the United States at the time of the alleged conduct that purportedly occurred while she was in office, *i.e.*, from January 21, 2009 to February 1, 2013." *Id.*; *see also* 28 C.F.R. § 15.4(a) (delegating the authority to make Westfall Act certifications to "any Director of the Torts Branch, Civil Division, Department of Justice"). Based on that certification, defendant has moved to substitute the United States as the proper defendant for plaintiffs' claims in Counts I and IV, and as the proper defendant in counts V and VI to the extent

13

that those counts challenge Secretary Clinton's actions while she was Secretary of State.  U.S.

Mot. to Substitute at 3–4.

To rebut the presumption created by the Westfall Act certification, plaintiffs bear the burden of pleading sufficient facts that would establish that defendant's actions exceeded the scope of her employment.  *Stokes*, 327 F.3d at 1215.  Because plaintiffs have failed to allege sufficient facts to rebut the presumption, the United States will be substituted as the defendant with respect to the counts that relate to Secretary Clinton's conduct as Secretary of State.

"In determining whether an employee acted within the scope of his employment, [a court must] consider the substantive law of the jurisdiction where the employment relationship exists – here, the law of the District of Columbia."  *Jacobs*, 724 F.3d at 221, citing *Majano*, 469 F.3d at 141.  D.C. courts follow the test set forth in the Second Restatement of Agency, which explains that conduct of a servant is within the scope of employment if:  "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master."  *Id.*, citing Restatement (Second) of Agency § 228.  "The test is 'objective' and is 'based on all the facts and circumstances,'" *id.*, quoting *Weinberg v. Johnson*, 518 A.2d 985, 991 (D.C. 1986), and it has been "broadly interpreted."  *Id.*  Accordingly, under District of Columbia law, "[t]he scope-of-employment test often is akin to asking whether the defendant merely was on duty or on the job when committing the alleged tort."  *Id.*, quoting *Harbury v. Hayden*, 522 F.3d 413, 422 n.4 (D.C. Cir. 2008).

14

Plaintiffs challenge the certification by asserting that their "claims are being brought against [Secretary] Clinton in her individual capacity and not her capacity as former Secretary of State of the United States." Pls.' Opp. to U.S. Mots. at 1. They argue that defendant was acting outside her duties as Secretary of State because she: (1) used a private email server to send and receive emails, (2) retained State Department records after departing office, and (3) failed to preserve certain emails that were sent and received via the private email server. Pls.' Opp. to U.S. Mots. at 2–3.[5] And they posit that "using a private email server to send and receive classified information, including information that directly led to the Benghazi attack[,] is not the kind [Secretary] Clinton was employed to perform." Pls.' Opp. to U.S. Mots. at 4, citing Compl. ¶¶ 9, 15. But the Westfall Act determination is not based on whether the government employee's actions can be characterized as wrongful or unlawful; the question is whether she was acting within the scope of the position occupied at the time.

Courts have emphasized that "[t]o qualify as conduct of the kind [an employee] was employed to perform, the defendant's actions must have either been of the same general nature as that authorized or *incidental* to the conduct authorized." *Ballenger*, 444 F.3d at 664 (emphasis in original), quoting *Haddon v. United States*, 68 F.3d 1420, 1424 (D.C. Cir. 1995). In *Ballenger*, the Court of Appeals upheld the district court's substitution of the United States as a defendant in a case in which the plaintiff brought an action for defamation and slander against a U.S. Congressman for certain statements he made on the telephone to a reporter. *Id.* at 661–62. The court reasoned that "[t]he appropriate question . . . is whether th[e] telephone conversation" in which the defendant allegedly made a defamatory statement about the plaintiff "was the kind of

---

5    Plaintiffs do not explain how Secretary Clinton's recordkeeping practices after she left office has any bearing on whether she was acting in the scope of her employment at the time of the Benghazi attack.

15

conduct [the defendant] was employed to perform" – not whether the allegedly defamatory sentence itself was within the scope of the defendant's employment. *Id.* at 664–65. The court concluded that the congressman's communication with the press fell within the scope of his duties, which require him to have a relationship with the public. *Id.*

Similarly, in *Jacobs*, the Court of Appeals upheld the substitution of the United States as a defendant for a manager at the General Services Administration who allegedly defamed the plaintiff when he received a call for an employment reference from the plaintiff's prospective employer. 724 F.3d at 222. The Court of Appeals, relying on *Ballenger*, focused on the type of act – "responding to a prospective employer's request for a reference" – and concluded that it was "plainly 'the type of conduct [the defendant] was employed to perform'" as a supervisor. *Id.*, quoting *Ballenger*, 444 F.3d at 664.

*Ballenger* and *Jacobs* are consistent with other circuit precedent on whether senior Executive Branch officials were acting within the scope of their employment. *See Wilson v. Libby*, 535 F.3d 697, 711–12 (D.C. Cir. 2008) (holding that the defendants – Vice President Cheney, former Chief of Staff I. Lewis Libby, former Senior Advisor to the President Karl C. Rove, and the former Deputy Secretary of State Richard L. Armitage – acted within the scope of their employment when they made comments to the press which revealed a covert agent's identity, because "[i]t can hardly be disputed that such discussions were of the type that the defendants were employed to perform"); *Rasul v. Myers*, 512 F.3d 644, 656–60 (D.C. Cir. 2008) (holding that the alleged "authorization, implementation and supervision of torture" was within the scope of employment of military officers who interrogated defendants at the United States Naval Base at Guantanamo Bay, Cuba, because "the detention and interrogation of suspected enemy combatants [was] a central part of the [employees'] duties as military officers charged with winning the war

16

on terror," even notwithstanding "allegations of serious criminality"), *vacated and remanded*, 555

U.S. 1083 (2008), *reinstated in relevant part*, 563 F.3d 527 (D.C. Cir. 2009).

Here, the complaint alleges that Clinton "served as U.S. Secretary of State from 2009 until 2013" and that "[d]uring her tenure as Secretary of State," she "utilized a private e-mail server to conduct official government business," which ultimately, plaintiffs allege, led to the death of their sons. Compl. ¶¶ 8, 9, 17. And the "law requires that we focus on the type of act . . . that allegedly gave rise to the tort, not the wrongful character of that act." *Jacobs*, 724 F.3d at 221. So the question is not whether Secretary Clinton is being sued in her individual or official capacity, and it also does not matter whether Secretary Clinton used a private email server lawfully or unlawfully. Instead, the relevant inquiry is whether Secretary Clinton's electronic communications with State Department personnel about official business during her tenure were within the scope of her employment as the head of the State Department.

The Court finds that Secretary Clinton was acting within the scope of her employment at the relevant time because her actions – communicating with other State Department personnel and advisors about the official business of the department – fall squarely within the scope of her duty to run the Department and conduct the foreign affairs of the nation as Secretary of State. So, pursuant to the Westfall Act, the Court will substitute the United States as the sole defendant in Counts I and IV, and as the defendant in Counts V and VI to the extent that those counts relate to actions taken during Secretary Clinton's tenure as Secretary of State. The claims of wrongful death, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress against Secretary Clinton in her individual capacity will be dismissed.

17

**II.    The Court lacks subject matter jurisdiction over plaintiffs' tort claims because plaintiffs have not exhausted their administrative remedies.**

After a Westfall Act substitution in a tort case, "the suit is governed by the Federal Tort Claims Act ('FTCA') and is subject to all of the FTCA's exceptions for actions in which the [g]overnment has not waived sovereign immunity." *Wuterich*, 562 F.3d at 380, citing *Osborn*, 549 U.S. at 230. The FTCA bars plaintiffs from bringing certain claims against the government, *see* 28 U.S.C. § 2680, and it sets requirements for administrative exhaustion of claims and timely filing of administrative claims. 28 U.S.C. § 2401(b). Here, the government has not waived its sovereign immunity, plaintiffs' tort claims are specifically excluded under the FTCA, and plaintiffs have failed to exhaust their administrative remedies. Therefore, the Court lacks subject matter jurisdiction over plaintiffs' tort claims.

Under the FTCA:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the [g]overnment while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency.

28 U.S.C. § 2675(a).[6] Where a plaintiff does not exhaust administrative remedies, the FTCA bars his tort claims. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (affirming dismissal of plaintiff's FTCA claim for lack of subject matter jurisdiction because "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies").

Plaintiffs concede that they failed to exhaust administrative remedies. Pls.' Opp. to U.S. Mots. at 7–8. But they argue that their failure to exhaust should be excused because they contend

---

6    There are a number of exceptions to the requirements of the FTCA, *see* 28 U.S.C. § 2680, but none are applicable here.

that exhaustion would be futile.  *Id.*  Plaintiffs' argument fails, because the FTCA's exhaustion requirement is jurisdictional and cannot be excused.

An administrative exhaustion requirement can be jurisdictional or it can be non-jurisdictional.  *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004).  Non-jurisdictional exhaustion refers to "a judicially created doctrine requiring parties who seek to challenge agency action to exhaust available administrative remedies before bringing their case to court."  *Id.*  A court may excuse a lack of non-jurisdictional exhaustion for a number of reasons, including where there are no facts in dispute, where the disputed issue is outside of the agency's expertise, where the agency may not be able to redress the grievance, where exhaustion would prejudice the litigants, or where exhaustion would be futile because of agency bias.  *Id.*, citing *McKart v. United States*, 395 U.S. 185, 197–98, 198 n.15 (1969); *McCarthy v. Madigan*, 503 U.S. 140, 146–49 (1992).

There is a presumption that exhaustion is non-jurisdictional "unless 'Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision.'"  *Id.* at 1248, quoting *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus.*, 727 F.2d 1204, 1208 (D.C. Cir. 1984).  But where "Congress requires resort to the administrative process as a predicate to judicial review . . . a court cannot excuse it."  *Id.*  The D.C. Circuit has "treated the FTCA's requirement of filing an administrative complaint with the appropriate agency prior to instituting an action as jurisdictional."  *Simpkins*, 108 F.3d at 371.  Here, because plaintiffs concede that they failed to exhaust administrative remedies, the Court has

19

no power to hear the claims against the United States at all.[7]  Given this lack of subject matter

jurisdiction, Counts I and IV will be dismissed without prejudice in their entirety under Rule

12(b)(1), and Counts V and VI will be similarly dismissed without prejudice to the extent that they

allege intentional or negligent infliction of emotional distress due to Secretary Clinton's email

practices.[8]

Because the counts against the United States will be dismissed for lack of subject matter

jurisdiction, the Court need not consider whether service on the United States was proper.[9]

**III.    Plaintiffs' defamation and false light claims do not state a plausible claim for relief.**

In Count II, plaintiffs allege that Secretary Clinton defamed them when she made the

statements set forth in paragraph 23 of the complaint and denied telling plaintiffs that the Benghazi

Attack was caused by an anti-Muslim YouTube video.  According to plaintiffs, with these

---

7      In a prior unrelated opinion in an FTCA case, the Court observed that the "only recognized exceptions to the exhaustion requirement are where administrative remedies are inadequate or where irreparable injury would result absent immediate judicial review."  *Bannum, Inc. v. Samuels*, No. 15-cv-1233, 2016 WL 6459549, at *8 (D.D.C. Oct. 28, 2016), citing *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 108 (D.C. Cir. 1986).  However, *Randolph-Sheppard* was a case that involved non-jurisdictional exhaustion, and it does not stand for the proposition that failure to exhaust an FTCA claim can be excused.

8      The D.C. Circuit has explained that a dismissal for failure to exhaust administrative remedies under the FTCA should be without prejudice, so that a plaintiff can exhaust those claims and refile the lawsuit.  *Simpkins*, 108 F.3d at 371.

9      The Court notes, though, that plaintiffs admit that they failed to properly effect service on the United States because they failed to strictly comply with Federal Rule of Civil Procedure 4(i). *See* Pls.' Opp. to U.S. Mots. at 8.  "A federal court may assert personal jurisdiction over a defendant only if 'the procedural requirements of effective service of process are satisfied.'"  *Freedom Watch, Inc. v. OPEC*, 766 F.3d 74, 78 (D.C. Cir. 2014), quoting *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012).  While courts sometimes consider actual notice in cases where service was technically improper but where a plaintiff is otherwise "in substantial compliance with the formal requirements of the Federal Rules," *id.* at 81, quoting *Prewitt Enters., Inc. v. OPEC*, 353 F.3d 916, 924 n.14 (11th Cir. 2003), the Court need not decide whether actual notice is sufficient in this case, in light of its dismissal of the United States on subject matter jurisdiction grounds.  But plaintiffs should take care to comply fully with Rule 4 if the matter is re-filed after the claims are exhausted.

20

statements, Secretary Clinton falsely accused them of lying. Compl. ¶ 33. In Count III, they allege

that Secretary Clinton's statements "placed [them] in a false light." *Id.* ¶ 41.

### A. Legal standard

To state a claim for defamation under District of Columbia law, a plaintiff must allege "(1) that he was the subject of a false and defamatory statement; (2) that the statement was published to a third party; (3) that publishing the statement was at least negligent; and (4) that the plaintiff suffered either actual or legal harm." *Farah v. Esquire Magazine*, 736 F.3d 528, 533–34 (D.C. Cir. 2013). Similarly, "[a] 'false light claim . . . requires a showing of: (1) publicity; (2) about a false statement, representation or imputation; (3) understood to be of and concerning the plaintiff; and (4) which places the plaintiff in a false light that would be offensive to a reasonable person.'" *Doe v. Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1267 (D.C. 2015), quoting *Bean v. Gutierrez*, 980 A.2d 1090, 1094 (D.C. 2009). Because these two torts share similar elements, they are often "analyzed in the same manner," especially "where the plaintiff rests both his defamation and false light claims on the same allegations." *Blodgett v. Univ. Club*, 930 A.2d 210, 222–23 (D.C. 2007). While the elements of false light are similar to the elements of defamation, the remedies are distinct. "[A] defamation tort redresses damage to reputation while a false light privacy tort redresses mental distress from having been exposed to public view." *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990).

"When confronted with a motion to dismiss [a defamation claim], a court must evaluate '[w]hether a statement is capable of defamatory meaning,'" which is a threshold "question of law." *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1091 (D.C. Cir. 2007), quoting *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001). A court must also determine the threshold question of law of whether the statement is false. *White*, 909 F.2d at 520 ("Defamatory meaning and falsity are distinct elements of the tort of defamation and are considered separately."). To

21

evaluate whether a statement is capable of defamatory meaning, courts use a two-part framework

that considers "'(a) whether a communication is capable of bearing a particular meaning, and (b)

whether that meaning is defamatory.'  The jury then determines whether the communication was

in fact so understood by its recipient." *Moldea v. N.Y. Times Co.*, 15 F.3d 1137, 1142 (D.C. Cir.

1994), quoting Restatement (Second) of Torts § 614 (1977), *modified on reh'g on other grounds*,

22 F.3d 310 (D.C. Cir. 1994).   Because the Court finds no defamatory meaning, it will not

separately assess whether the statements were provably false.

## B.   Plaintiffs have failed to plausibly allege that Secretary Clinton made statements capable of a defamatory meaning, so the defamation claims fail as a matter of law.

Plaintiffs allege that Secretary Clinton defamed them when she publicly disputed plaintiffs'

report that the Secretary of State had told them in 2012 that the "Benghazi Attack was caused by

an anti-Muslim YouTube video."  Compl. ¶ 33.  They state that the defendant defamed them "by

either directly calling them liars, or by strongly implying that they are liars."  *Id.* ¶ 23.  But in

ruling on a motion to dismiss, the Court is only bound by plaintiff's factual assertions, not their

conclusions or characterizations of the facts.  *Browning*, 292 F.3d at 242.

Plaintiffs specifically allege that the following statements were defamatory:

- In response to a question, "Did you tell them it was about the film," Secretary Clinton said, "No . . . I said very clearly there had been a terrorist group, that had taken responsibility on Facebook . . . And then we learned the next day it wasn't true.  In fact, they retracted it.  This was a fast-moving series of events in the fog of war and I think most Americans understand that." Compl. ¶ 23(a).

This statement contradicts plaintiff's account but it does not state or suggest that they are lying.

- In light of plaintiffs' allegations, Secretary Clinton was asked, "Somebody is lying. Who is it?"  She responded, "Not me, that's all I can tell you."  *Id.* ¶ 23(b).

 Here, it was the reporter who sensationalized the dispute by positing that someone was lying, and

the Secretary simply denied that she was.

- When asked about plaintiff Smith's allegations, Secretary Clinton said, "I feel a great deal of sympathy for the families of the four brave Americans that we lost at Benghazi, and I certainly can't even imagine the grief that she has for losing her son, but she's wrong. She's absolutely wrong." *Id.* ¶ 23(c).

This was a firm denial of plaintiff Smith's accusation but again, it does not state or suggest that plaintiff Smith was intentionally lying or impugn her character in any way.

- In response to a question about the plaintiffs, Secretary Clinton said "As other members of families who lost loved ones have said, that's not what they heard. I don't hold any ill feeling for someone who in that moment may not fully recall everything that was or wasn't said." *Id.* ¶ 23(d).

Here, the Secretary bolstered her own account of events and offered a reason for why plaintiffs' version differed, it was not that the family members were lying.

"[T]he defamatory meaning inquiry focuses only on whether a reasonable reader could understand a statement as tending to injure a plaintiff's reputation." *Moldea*, 15 F.3d at 1142. Ultimately, "[i]t is only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law, that it was not libelous." *White*, 909 F.2d at 518, quoting *Levy v. Am. Mutual Ins. Co.*, 196 A.2d 475, 476 (D.C. 1964).

Here, plaintiffs do not point to any statement in which the Secretary directly accused them of lying, so their claim is based upon a claim that such an accusation was implied. In a case involving defamation by implication – where defamation is alleged based "not from what is literally stated, but from what is implied . . . , courts must be vigilant not to allow an implied defamatory meaning to be manufactured from words not reasonably capable of sustaining such meaning." *White*, 909 F.2d at 518–19. As the D.C. Circuit held in *White*:

> [Where] a communication, viewed in its entire context, merely conveys materially true facts from which a defamatory inference can reasonably be drawn, the libel is not established. But if the communication, by the particular manner or language in which the true facts are conveyed, supplies

23

additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference, the communication will be deemed capable of bearing that meaning.

*Id.* at 520.

Under District of Columbia law, an "allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Jankovic*, 494 F.3d at 1091, quoting *Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984).[10] Applying that test, the Court concludes that the statements in question are not capable of a defamatory meaning.

Secretary Clinton did not refer to plaintiffs as liars. While interviewers repeatedly pressed her to answer the question, "who lied," only once did she answer the question directly, and even then, her comments focused solely on her own conduct, not the plaintiffs'. *See* Compl. ¶ 23(b) ("Not me, that's all I can tell you."). And in each of the other responses catalogued in the complaint, Secretary Clinton expressed empathy and regret. *Id.* ¶¶ 23(a) ("You know, look I understand the continuing grief at the loss that parents experienced with the loss of these four brave Americans"); *id.* ¶ 23(c) (responding to a question about plaintiff Smith's allegations, "I feel a great deal of sympathy for the families of the four brave Americans that we lost at Benghazi, and I certainly can't even imagine the grief that she has for losing her son"); *id.* ¶ 23(d) ("Chris, my heart goes out to both of them. Losing a child under any circumstances . . . I understand the grief and the incredible sense of loss that can motivate that.").

---

10    Secretary Clinton argued in her motion to dismiss that at least some of the statements at issue did not make plaintiffs appear to be "odious, infamous or ridiculous." Clinton MTD at 10. Other than noting that defendant's contention is "wrong," Pls.' Opp. to Clinton MTD at 6, plaintiffs do not respond to the argument, so they may have conceded it. LCvR 7(b); *see also Cohen v. Bd. of Trs. of Univ. of D.C.*, 819 F.3d 476, 480 (D.C. Cir. 2016).

24

While Secretary Clinton certainly maintained that the plaintiffs were "wrong," and she noted that others who heard the same exchange supported her version, those comments do not begin to rise to the level of the statements found to be actionable in *Jankovic*. In that case, the D.C. Circuit found a statement defamatory because it "could lead a reasonable reader to conclude" that the plaintiff was "actively in alliance" with an international leader who had committed "war crimes." *Jankovic*, 494 F.3d at 1091. Plaintiffs may find the candidate's statements in her own defense to be "unpleasant or offensive," but Secretary Clinton did not portray plaintiffs as "odious, infamous, or ridiculous." *See id.*, quoting *Best*, 484 A.2d at 989. To the contrary, the statements portray plaintiffs as normal parents, grieving over the tragic loss of their loved ones.

So Count II will be dismissed on the basis that plaintiffs have not plausibly alleged that Secretary Clinton made defamatory statements about them.

### C.    Plaintiffs have not alleged that the statements were defamatory as a matter of law, nor have they alleged special harm.

Even if Secretary Clinton had uttered statements that, by implication, could give rise to a defamatory meaning, plaintiffs have not alleged that they suffered harm as a result, and Count II could be dismissed on that ground as well. A claim for defamation requires either a statement that is "actionable as a matter of law" regardless of whether it caused actual harm, or a showing that the "publication caused the plaintiff special harm." *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1240 (D.C. 2016), quoting *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005). A statement is actionable as a matter of law when it "tend[s] to injure a person's reputation," such as when a speaker "imput[es] to a person a criminal offense; a loathsome disease; matter affecting adversely a person's fitness for trade, business, or profession; or serious sexual misconduct." *Carey v. Piphus*, 435 U.S. 247, 262 n.18 (1978); *see also Franklin v. Pepco Holdings, Inc.*, 875 F. Supp. 2d 66, 75 (D.D.C. 2012) ("A statement is defamatory as a matter of law . . . if it is so likely to

25

cause degrading injury to the subject's reputation that proof of that harm is not required to recover compensation."), citing *Carey*, 434 U.S. at 262; *Farnum v. Colbert*, 293 A.2d 279, 282 (D.C. 1972) (a court can overlook an absence of facts related to damages if the slanderous words "inherently tend to damage a person's reputation"), citing Restatement of Torts § 569 (1938).

Plaintiffs allege that Secretary Clinton's suggestion that they lied has caused them to suffer "injury to reputation," Compl. ¶ 37, but the alleged instances of defamation in this case do not satisfy the legal test for statements that are inherently actionable as a matter of law. Plaintiffs maintain in response to the motion to dismiss that the statements are actionable *per se* because they "clearly adversely affect [p]laintiffs' ability to be employed." Pls.' Opp. to Clinton MTD at 13. But that is not clear at all, and plaintiffs' bald assertion is not sufficient to liken Secretary Clinton's statements to the sorts of utterances that courts consider to be defamatory *per se*. There are no facts alleged that would support an inference that the statements by Secretary Clinton, even if they had implied or suggested that the plaintiffs had not been truthful about this one very specific, highly personal matter, would have any impact on the plaintiffs' ability to secure or maintain employment; indeed, the complaint makes no mention of whether the plaintiffs are engaged in any profession at all, or if they are seeking work. And the statements do not rise to the level of a criminal accusation or a public charge of sexual misconduct.

In the absence of a published statement that is defamatory *per se*, plaintiffs were bound to allege actual or pecuniary harm. Again, in opposition to the motion, plaintiffs point to a purely conclusory allegation. Pls.' Opp. to Clinton MTD at 13 ("As a direct and proximate result of [Secretary] Clinton's statements, [p]laintiffs have suffered pecuniary damage . . . ."), quoting Compl. ¶ 37. But plaintiffs must offer more than labels and conclusions to state a claim, *see Iqbal*, 556 U.S. at 668, quoting *Twombly*, 550 U.S. at 555, and this is insufficient. *See Xereas v. Heiss*,

26

933 F. Supp. 2d 1, 19 (D.D.C. 2013) (holding that the plaintiff in a defamation case "must allege some specific harm and the actual pecuniary loss arising from that harm"), citing *Franklin*, 875 F. Supp. 2d at 75 (granting a motion to dismiss a defamation claim where a plaintiff alleged harm stemming from the "risk [of] having her credit suffer," because the plaintiff did "not say that this harm has actually occurred, or that she has sustained any pecuniary loss as a result.").

Because plaintiffs have not adequately pled that they suffered harm, the defamation count could be dismissed on that independent basis as well.[11]

### D.    Plaintiffs' false light claim fails to state a claim for the same reasons.

In Count III, plaintiffs allege that the allegedly defamatory statements set forth in paragraph 23 of the complaint "placed Plaintiffs in a false light that would be offensive to a reasonable person." Compl. ¶¶ 39–42. Because plaintiffs rest "both [their] defamation and false light claims on the same allegations . . . the claims will be analyzed in the same manner." *Blodgett*, 930 A.2d at 222–23. The Court finds that the statements at issue, which did not portray plaintiffs as "odious, infamous, or ridiculous," *Jankovic*, 494 F.3d at 1091, quoting *Best*, 484 A.2d at 989, would not be highly offensive to a reasonable person. *See Weyrich*, 235 F.3d at 628 (recognizing that the "highly offensive" and "odious, infamous, and ridiculous" inquiries are "similar," but noting that the two tests "may sometimes produce different results"), citing Restatement (Second) of Torts § 652E cmt b. So Count III will be dismissed for failure to state a claim.

## IV.    Plaintiffs have not stated a claim for intentional infliction of emotional distress caused by the allegedly defamatory statements.

In Count V, plaintiffs allege that Secretary Clinton's actions in using the private email server, and in "defaming and holding [them] in a false light . . . on information and belief, directly

---

11    In light of the Court's findings on the lack of any defamatory meaning or special harm, the Court need not address the question of whether the statements are provably false or whether they were made without privilege. *See* Clinton MTD at 11–15.

27

caused [p]laintiffs severe emotional distress." Compl. ¶¶ 50–52. "The elements of [the tort of intentional infliction of emotional distress] are '(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress.'" *Smith v. United States*, 843 F.3d 509, 515 (D.C. Cir. 2016), quoting *Minch v. District of Columbia*, 952 A.2d 929, 940 (D.C. 2008). To qualify as sufficiently extreme and outrageous, the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013), quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 n.10 (D.C. 1994).

The portion of the count dealing with the email server was dismissed once the United States was substituted as a defendant. As for the portion of the count that deals with Secretary Clinton's statements as a private citizen, the fact that the Secretary disputed the plaintiffs' account of events does not rise to the level of being "utterly intolerable in a civilized community." *Armstrong*, 80 A.3d at 189. So Count V does not state a plausible claim for intentional infliction of emotional distress.

## CONCLUSION

The Court finds for purposes of the Westfall Act that Secretary Clinton was acting in the scope of her employment when she communicated with State Department personnel via the private email server as Secretary of State, and it finds that she did not defame the plaintiffs or hold them in a false light when she disputed their public allegations that she had lied to them in 2012. So judgment will be entered for the United States on Counts I and IV, and on Counts V and VI to the extent that they relate to the actions that Secretary Clinton took as Secretary of State, and judgment

28

will be entered for Secretary Clinton on Counts II and III, and on Counts V and VI to the extent

that those counts are premised on the alleged defamation.

     A separate order will issue.

                    AMY BERMAN JACKSON
                    United States District Judge

DATE:  May 26, 2017