**ORAL ARGUMENT REQUESTED**

**CASE NO. 17-5133**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

PATRICIA SMITH and CHARLES WOODS

Plaintiffs-Appellants,
v.

HILLARY CLINTON and UNITED STATES OF AMERICA

Defendants-Appellees.

---

APPEAL FROM AN ORDER
OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**AMENDED PLAINTIFFS-APPELLANTS' INITIAL BRIEF**

---

Larry Klayman, Esq.
Klayman Law Group, P.A.
2020 Pennsylvania Ave. N.W.
Suite 800
Washington, D.C. 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

*Attorney for Plaintiffs-Appellants*

**Dated**: September 28, 2017

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.**      **Parties**

Patricia Smith is an individual and a Plaintiff/Appellant. Charles Woods is an individual and a Plaintiff/Appellant. Hillary Clinton is an individual and a Defendant/Appellee. The United States of America is a Defendant/Appellee. There were no amici in the district court or in the appellate court.

**B.**      **Rulings**

Appellants appeal from the U.S. District Court for the District of Columbia's order granting the United States' Motion for Partial Substitution, the United States Motion to Dismiss, and Appellee Clinton's Motion to Dismiss (ECF No. 36) by the Honorable Amy Berman Jackson on May 26, 2017. App. _____.

**C.**      **Related Cases**

This case was not previously before this court or any other court, and Appellants are unaware of any related cases.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure ("FRAP") 26.1, the Plaintiffs-Appellants, Patricia Smith ("Smith") and Charles Woods ("Woods") (collectively ("Plaintiffs-Appellants"), are natural persons and are not officers, directors, or majority shareholders of any publicly traded corporation.

## **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................ 1

STATEMENT OF THE CASE ....................................................................... 2

SUMMARY OF THE ARGUMENT ............................................................ 3

STANDARD OF REVIEW ......................................................................... 6

ARGUMENT ......................................................................................... 9

    THE DISTRICT COURT ERRED WHEN IT FOUND THAT
    APPELLANTS FAILED TO STATE PLAUSIBLE CLAIMS FOR RELIEF
    FOR DEFAMATION AND FALSE LIGHT. .................................................. 9

        The Defamatory Publications ........................................... 10

        General Defamation ....................................................... 12

            False and Defamatory Statements ............................... 13

            The Statements Were Actionable As a Matter of Law ........... 15

        Defamation by Implication ............................................. 15

    THE DISTRICT COURT ERRED WHEN IT FOUND THAT
    PLAINTIFFS-APPELLANTS FAILED TO STATE A PLAUSIBLE
    CLAIM FOR RELIEF FOR INTENTIONAL INFLICTION OF
    EMOTIONAL DISTRESS BECAUSE DEFENDANT-APPELLEE
    CLINTON'S CONDUCT RISES TO THE LEVEL OF OUTRAGEOUS
    AND EXTREME ......................................................................... 19

    THE DISTRICT COURT ERRED WHEN IT FOUND THAT THE
    WESTFALL ACT APPLIED TO DEFENDANT-APPELLEE BECAUSE
    SHE ACTED OUTSIDE THE SCOPE OF HER EMPLOYMENT WHEN
    SHE USED A PRIVATE, PERSONAL EMAIL SERVER TO TRANSMIT
    INFORMATION THAT DIRECTLY LED TO THE DEATHS OF
    PLAINTIFFS-APPELLANTS SONS ......................................................... 21

CONCLUSION ....................................................................................... 29

## **Table of Authorities**

### *Cases*

*Afro-American Publ'g Co. v. Jaffe*, 366 F.2d 649 (D.C. Cir. 1966)....................... 13

*Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013)........................................ 19

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ......................................................... 3, 4, 8

*Bean v. Gutierrez*, 980 A.2d 1090 (D.C. 2009) ................................................. 13, 18

*Bell Atlantic Corp. v. Twombly*, 500 U.S. 544 (2007) ..................................... 3, 7, 9

*Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659 (D.C. Cir. 2006).... 23

*Croixland Properties Ltd. v. Corcoran,* 174 F.3d 213 (D.C. Cir. 1999) .......... 6, 7, 8

*Crowley v. N. Am Telecomms. Ass'n*, 691 A.2d 1169 (D.C. 1997) ....................... 12

*Dimick v. Schiedt*, 293 U.S. 474 (U.S. 1935)......................................................... 10

*Doe v. Bernabei & Wachtel*, PLLC, 116 A.3d 1262 (D.C. 2015) ................... 13, 18

*Dunn v. Gannett New York Newspapers, Inc.*, 833 F.2d 446
(3d Cir. 1987)................................................................................... 14, 15, 17

*Erickson v. Pardus*, 551 U.S. 89 (2007) .............................................................. 8, 9

*Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580 (D.C. 2000)...................... 13

*Gutierrez De Martinez v. Lamagno*, 515 U.S. 417 (U.S. 1995) ............................ 22

*Howard Univ. v. Best*, 484 A.2d 958 (D.C. 1984)................................................. 13

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507
U.S. 163 (1993)................................................................................................ 7

*Levy v. American Mut. Ins. Co.*, 196 A.2d 475 (D.C. 1964).................................. 14

*Kalil v. Johanns*, 407 F. Supp. 94(D.D.C. 2005) .................................................. 22

*Kimbro v. Velten*, 30 F.3d 1501 (D.C. Cir. 1994).................................................. 23

*Memphis Publishing Co. v. Nichols*, 569 S.W.2d 412 (Tenn. 1978)...................... 16

*Moldea v. New York Times Co.*, 15 F.3d 1137(D.C. Cir. 1994) ............................ 15

*Newton v. National Broadcasting Co*., 930 F.2d 662 (9th Cir. 1990) ................... 15

*Oparaugo v. Watts*, 884 A.2d 63 (D.C. 2005) ...................................................... 12

*Osborn v. Haley*, 549 U.S. 225 (2007) ................................................................. 22

*Peters v. National R.R. Passenger Corp*., 966 F.2d 1483 (D.C. Cir. 1992) ............. 6

*Rasul v. Myers*, 512 F.3d 644 (D.C. Cir. 2008) .............................................. 23, 26

*S. Business Machs v. Norwest Fin. Leasing*, 390 S.E.2d 402
(Ga. Ct. App. 1990 ................................................................................ 16

*Schuler v. United States*, 617 F.2d 605 (D.C. Cir. 1979)............................ 7

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ................................... 9

*Westfall v. Erwin*, 484 U.S. 292 (1988) ................................................. 22

*Weyrich v. New Republic, Inc.* 235 F.3d 617 (D.C. Cir. 2001) ...................... 10, 14

*White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990) .... 13, 14, 15, 17

### *Statutes*

18 U.S.C. § 201 ....................................................................................... 27

18 U.S.C. § 208 ....................................................................................... 27

18 U.S.C. § 371 ....................................................................................... 27

18 U.S.C. § 1001 ..................................................................................... 27

18 U.S.C. § 1341 ..................................................................................... 27

18 U.S.C. § 1343 ..................................................................................... 27

18 U.S.C. § 1349 ..................................................................................... 27

18 U.S.C. § 1505 ..................................................................................... 27

18 U.S.C. § 1519 ..................................................................................... 27

18 U.S.C. § 1621 ..................................................................................... 27

18 U.S.C. § 1905 ..................................................................................... 27

18 U.S.C. § 1924 ..................................................................................... 27

18 U.S.C. § 2071 ..................................................................................... 27

18 U.S.C. § 7201 ..................................................................................... 27

18 U.S.C. § 7212 ..................................................................................... 27

28 U.S.C. § 1291 ....................................................................................... 1

28 U.S.C. § 1332 ....................................................................................... 1

28 U.S.C. § 2679(d) ............................................................................ 21, 22

36 C.F.R. § 1222.24 ................................................................................. 24

Fed R. Civ. P. 8(a)(2) ..................................................................... 4, 6, 7, 9

Fed R. Civ. P 12(b)(6) .............................................................................. 7

***Other Sources***

R. SACK, LMEsL, SLANDER, AND RELATED PROBLEMS .......................... 16

Restatement (Second) of Agency § 228 (1958) ................................................ 23, 24

## JURISDICTIONAL STATEMENT

The basis for the U.S. District Court for the District of Columbia's ("District Court") subject-matter jurisdiction is pursuant to 28 U.S.C. § 1332 under diversity of citizenship. The basis for the U.S. Court of Appeals for the District of Columbia Circuit's subject-matter jurisdiction is pursuant to 28 U.S.C. § 1291 because this appeal is from a final judgment that disposes of all parties' claims. After requests for extensions of time, this Court ordered on September 7, 2017 that Plaintiffs-Appellants' Initial Brief is due September 27, 2017.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court erred by granting Defendant-Appellee's Motion to Dismiss and thereby dismissed Plaintiffs-Appellants' claims for defamation, false light, and intentional infliction of emotional distress against Clinton personally, in view of the record evidence sufficient to establish at least triable issues of fact on each of the elements of the causes of action?

2.      Whether the District Court erred by holding that Defendant-Appellee Hillary Clinton ("Defendant-Appellee" or "Clinton") acted within the scope of her employment when she used a private, personal email server to transmit information personal and private information that directly led to the deaths of Appellants' sons?

///

///

1

## STATEMENT OF THE CASE

Plaintiffs-Appellants are the parents of Sean Smith and Tyrone Woods, both of whom were tragically killed on September 11, 2012 at the U.S. Consulate in Benghazi, Libya ("Benghazi Attack") by Islamic terrorists. Defendant-Appellee Clinton, who was at the time in office of U.S. Secretary of State, acted far outside the scope of her employment and utilized a private email server to send and receive top secret, confidential information, including the "location of Ambassador Christopher Stevens, and thus the U.S. Department of State and the covert Central Intelligence Agency ("CIA") and other government operations in Benghazi, Libya." Compl. at ¶ 15. These transmissions were hacked, by virtue of their unsecured nature, by foreign powers and terrorist designated states and directly led to the Benghazi Attack. Compl. at ¶ 16.

After the tragic attack, Defendant-Appellant met with Plaintiffs-Appellants at Joint Base Andres and told them each that the Benghazi Attack was a result of an Internet video criticizing the "prophet" Muhammad. Compl. at ¶¶ 19-20; *see also* Plaintiffs-Appellants' Affidavits, App. __; Diary entry of Charles Woods taken contemporaneously with meeting with Defendant-Appellee Clinton, App. __. Defendant-Appellee Clinton told this story to Plaintiffs-Appellants, despite fully knowing at the time that her statements were false.

2

To make matters worse, during her subsequent campaign for U.S. president, Defendant-Appellee Clinton negligently, recklessly and maliciously defamed Plaintiffs-Appellants in order to deflect harsh criticism and protect herself from public scrutiny while on the campaign trail by branding them as liars. On August 8, 2016, Plaintiffs-Appellants filed suit alleging wrongful death, defamation, false light, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. Plaintiffs-Appellants dismissed without prejudice their claim for negligent infliction of emotional distress on December 8, 2016. Then, straining mightily to dismiss this case, the District Court issued its order granting Defendants-Appellees' Motion to Dismiss on the eve of Memorial Day, May 26, 2017.

## SUMMARY OF THE ARGUMENT

The District Court's decision dismissing Plaintiffs-Appellant's Complaint misapplies the U.S. Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 500 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); draws inferences in favor of Defendant-Appellee rather than Plaintiffs-Appellants, sets the bar too high for pleading defamation, wrongful death, negligence, and intentional infliction of emotional distress; and undermines the notion that the filing of a complaint is the starting point for notice pleading that relies on

discovery rules and summary judgment motions to define the issues and dispose of unmeritorious claims. Therefore, the District Court's decision must be reversed.

The standard for notice pleading under Federal Rule of Civil Procedure 8(a)(2) only requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard is not onerous, and the "heightened" pleading standard applicable to some claims, such as fraud, is not applicable to defamation, wrongful death, negligence, and intentional infliction of emotional distress actions. The complaint need only contain sufficient factual allegations that, accepted as true, state a claim for relief that is "plausible," *i.e.*, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The complaint need not include detailed factual allegations (although Plaintiffs-Appellants complaint does), as long as the alleged facts are sufficient to state a claim to relief above the speculative level and give the defendant fair notice of what the claim is and the grounds upon which it rests.

The District Court dismissed the Complaint because it found that Plaintiffs-Appellants failed to state a claim upon which relief could be granted. Drawing all reasonable inferences in favor of Plaintiffs-Appellants, however, the Complaint alleged sufficient facts to state plausible claims for defamation, false light, wrongful death, negligence, and intentional infliction of emotional distress. The

complaint alleges that: (1) the deaths of Sean Smith and Tyrone Woods were directly and proximately caused by the negligent and reckless acts of Defendant-Appellee Clinton, who illegally and "recklessly" (even according to former Federal Bureau of Investigation ("FBI") James Comey) used a private email server to send and receive secret, confidential and classified government information that compromised the location of U.S. Ambassador Christopher Stevens and other operations in Benghazi Libya; *see* Compl. At ¶ 26; (2) Islamic terrorists were able to locate Ambassador Christopher Stevens, Sean Smith, and Tyrone Woods and orchestrate and execute the Benghazi Attack; *Id*. at ¶ 27; (3) Defendant-Appellee made false and defamatory statements negligently, recklessly, purposefully and/or intentionally concerning Plaintiffs-Appellants and Plaintiffs-Appellants set forth in detail what those false and defamatory statements were; *Id*. at ¶ 33; (4) Defendant-Appellee knew that her statements concerning Plaintiffs-Appellants were false and misleading, evidenced by her public comments after the Benghazi Attack; *Id*. at ¶ 34; (5) Defendant-Appellee made false and misleading statements, representations, and imputations about Plaintiffs-Appellants by falsely stating that Plaintiffs-Appellants were lying about Defendant-Appellee Clinton having told them the Benghazi Attack was caused by an anti-Muslim YouTube video and that claiming that Plaintiffs-Appellants were lying and questioning their honestly would be offensive to a reasonable person in the same or similar circumstance; *Id*. at ¶¶ 39,

41; and that, *inter alia*, (6) Defendant-Appellee Clinton engaged in an extreme and outrageous conduct. *Id*. at ¶ 50. As such, the Complaint is consistent with Rule 8(a)(2) and therefore the District Court erred in granting Defendant-Appellee's motion to dismiss.

Similarly, Defendant-Appellee Clinton acted outside the scope of her employment for the U.S. Department of State when she used a private, personal email server to conduct private and official business because this was not the kind of work the U.S. Department of State authorized and her actions were not caused in any way to fulfill her duties as U.S. Secretary of State.

For all of these reasons, Plaintiffs-Appellants respectfully request this honorable Court to vacate and reverse the District Court's holding and remand this case for further proceedings, with instructions to the District Court to conduct a thorough review of the pleadings, then allow for discovery, and later trial on the merits before a jury. Plaintiffs-Appellants also request oral argument before this Court.

## STANDARD OF REVIEW

Whether the District Court properly granted Defendants-Appellees Motion to Dismiss and entered judgment on the pleadings in favor of Defendant-Appellee is a question of law, which this Court reviews *de novo*. *Peters v. National R.R. Passenger Corp*., 966 F.2d 1483, 1485 (D.C. Cir. 1992); *see also Croixland*

*Properties Ltd. v. Corcoran,* 174 F.3d 213, 215 (D.C. Cir. 1999). In doing so, this Court must treat all the factual allegations of the complaint as true, *see Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993) (reviewing de novo the district court's dismissal of claims), and must grant plaintiff[s] "the benefit of all inferences that can be derived from the facts alleged," *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In several cases, the U.S. Supreme Court addressed the standards for deciding motions to dismiss a complaint for failure to state a claim.

First, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Court held that facts alleging that companies engaged in parallel business conduct, but not indicating the existence of an actual agreement, did not state a claim under the Sherman Act. The Court stated that in an antitrust action, the complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made," explaining that "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading state; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id*. at 556. The Court also explained, more generally, that ". . . a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

7

factual allegations," yet "must be enough to raise a right to relief above the speculative level" and give the defendant fair notice of what the claim is and the grounds upon which it rests. *Id*. at 555. In other words, Plaintiffs-Appellants here need only allege "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] the[] claims[] across the line from conceivable to plausible." *Id*. at 570.

Subsequently, in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Court elaborated. There, the Court held that a pretrial detainee alleging various unconstitutional actions in connection with his confinement failed to plead sufficient facts to state a claim of unlawful discrimination. The Court stated that the claim for relief must be "plausible on its face," *i.e.*, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. In this regard, determining whether a complaint states a plausible claim for relief is necessarily "a context-specific task." *Id*. at 1950. Therefore, if a complaint alleges enough facts to state a claim for relief that is plausible on its face, such as here, a complaint may not be dismissed for failing to allege additional facts that the plaintiff would need to prevail at trial. *Twombly*, 550 U.S. at 570; *see also Erickson v. Pardus*, 551 U.S. 89, 93 (plaintiff need not allege specific facts, the facts alleged must be accepted as

true, and the facts need only give defendant "fair notice of what the *** claim is and the grounds upon which it rests" (quoting *Twombly*, 550 U.S. at 555).

Where the requirements of Rule 8(a) are satisfied, even "claims lacking merit may be dealt with through summary judgment." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). In this regard, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

## ARGUMENT

### I.   THE DISTRICT COURT ERRED WHEN IT FOUND THAT APPELLANTS FAILED TO STATE PLAUSIBLE CLAIMS FOR RELIEF FOR DEFAMATION AND FALSE LIGHT.

The U.S. District Court for the District of Columbia ("District Court") based its Memorandum Opinion of May 26, 2017 ("Opinion") – sadly issued on the eve of Memorial Day when Plaintiffs-Appellants grieved over the deaths of their sons – on a false premise; that is, that Defendant-Appellee Clinton "did not refer to plaintiffs as liars," Mem. Op. at 24, when she publicly repudiated Plaintiffs-Appellants recitation of their meeting at Joint Base Andrews and therefore she is able to escape personal liability for her false, publicized statements about Plaintiffs-Appellants because the statements were not defamatory. But, defamation law – particularly on deciding whether to grant a motion to dismiss – is not that

stringent. The court "must assume, as the complaint alleges, the falsity of any express or implied factual statements made in the article [or publication]." *Weyrich v. New Republic, Inc*. 235 F.3d 617, 623 (D.C. Cir. 2001). It must also assume that the defamatory statements were made "with knowledge of their falsity or reckless disregard for their truth." *Id*. Additionally, in situations where resolution is necessarily fact intensive, like defamation, the U.S. Supreme Court has held that "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486 (U.S. 1935). The District Court mistakenly took these viable causes of action away from a jury and the District Court's decision must be vacated.

## A.    <u>The Defamatory Publications</u>

First, on December 6, 2015, during an interview with ABC's George Stephanopoulos, Defendant-Appellee Clinton flat out falsely denied telling the families of Benghazi victims that the YouTube video caused the attack. After George Stephanopoulos asked Defendant-Appellee, "Did you tell them it was about the film?", Defendant-Appellee responded:

> <u>No</u>. I can't – I can't help it the people think there has to be something else there. I said very clearly there had been a terrorist group, uh, that had taken responsibility on Facebook, um, between the time that, uh, I – you know, when I talked to my daughter, that was the latest

information; we were, uh, giving it credibility. And then we learned the next day it wasn't true. In fact, they retracted it. This was a fast-moving series of events in the fog of war and I think most Americans understand that.

Compl. at ¶ 23(a) (emphasis added).

Second, on December 30, 2015, during the Conway Daily Sun Editorial Board Meeting, Defendant-Appellee Clinton directly branded Plaintiffs-Appellants as liars. After Conway Daily Sun columnist Tom McLaughlin pointed out discrepancies in Defendant-Appellee's private and public comments about the cause of the Benghazi attack, and referenced her interview with George Stephanopoulos where she denies telling Plaintiffs-Appellants that the attack was caused by a YouTube video, McLaughlin asks, "Somebody is lying. Who is it?" Defendant-Appellee Clinton responds, "Not me, that's all I can tell you." Compl. at ¶ 23(b).

Third, on March 9, 2016, during the Democratic Presidential Debate, when asked about Plaintiff-Appellant Smith's allegation that Defendant-Appellee lied to her by blaming the Benghazi attack on a YouTube video, Defendant-Appellee Clinton responded by saying, "I feel a great deal of sympathy for the families of the four brave Americans that we lost at Benghazi, and I certainly can't even imagine the grief that she has for losing her son, but she's wrong. She's absolutely wrong." Compl. at ¶ 23(c).

Fourth, on July 31, 2016, during an interview with Chris Wallace of FOX News Sunday, Defendant-Appellee stated, "Chris, my heart goes out to both of them. Losing a child under any circumstances, especially in this case, two State Department employees, extraordinary men both of them, two CIA contractors gave their lives protecting our country, our values. I understand the grief and the incredible sense of loss that can motivate that. As other members of families who lost loved ones have said, that's not what they hear, I don't hold any ill feeling for someone who in that moment may not fully recall everything that was or wasn't said." Compl. at ¶ 23(d).

### B.     General Defamation.

To succeed on a claim for defamation, a plaintiff need only prove: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement [met the requisite standard]; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (quoting *Crowley v. N. Am Telecomms. Ass'n*, 691 A.2d 1169, 1173 n.2 (D.C. 1997)). Similarly, "[a] 'false light claim . . . requires a showing of: (1) publicity; (2) about a false statement, representation or imputation; (3) understood to be of and concerning the plaintiff; and (4) which

places the plaintiff in a false light that would be offensive to a reasonable person.'" *Doe v. Bernabei & Wachtel*, PLLC, 116 A.3d 1262, 1267 (D.C. 2015) quoting *Bean v. Gutierrez*, 980 A.2d 1090, 1094 (D.C. 2009).

### 1.    False and Defamatory Statements

A statement is defamatory "if it tends to injure [the] plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000) (quoting *Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984)). A publication may convey a defamatory meaning if it "tends to lower the plaintiff in the estimation of a substantial, respectable group, though they are a minority of the total community or [of the] plaintiff's associates." *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990) (quoting *Afro-American Publ'g Co. v. Jaffe*, 366 F.2d 649, 654 n.10 (D.C. Cir. 1966) (en banc)).

Defendant-Appellee's defamatory statements – that Plaintiffs-Appellants are not telling the truth, strongly implying that they lied in order to protect and enhance her public image and intimidate and emotionally harm and silence them not to speak up about the Benghazi attack – could only diminish Plaintiffs-Appellants' reputations and esteem in the community generally and certainly in the segment comprised of their friends, colleagues, associates, and potential employers. The defamatory statements would generate negative humiliation and

attitudes toward Plaintiffs-Appellants. Indeed, both Plaintiff-Appellant Charles Woods and Plaintiff-Appellant Patricia Smith swore under oath in affidavits that as a result of Defendant-Appellee's defamatory statements, they have suffered pecuniary damage, injury to reputation, ability to work, impairment to standing in their respective communities, personal humiliation, pain and suffering, and emotional distress. *See* App. ___.

Moreover, when a plaintiff requests a jury trial, it is not for the District Court to decide whether a statement is defamatory or not. "It is only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law, that it was not libelous." *Levy v. American Mut. Ins. Co.*, 196 A.2d 475, 476 (D.C. 1964); *Weyrich*, 235 F.3d at 627. "[I]f the language is capable of two meanings, one actionable and the other not, it is for the jury to determine which of the two meanings would be attributed to it by persons of ordinary understanding under the circumstances." *Levy*, 196 A.2d at 476. "[A] jury must determine whether these impressions were actually conveyed, whether they were false, and whether the letters were motivated by actual malice."[1] *White*, 909 F.2d at 525; *see also Dunn v. Gannett New York Newspapers, Inc.*, 833 F.2d 446,

---

[1] Plaintiffs-Appellants are not public figures and the malice standard cannot apply. Thus, the legal threshold for defamation is quite low.

449 (3d Cir. 1987) ("if the language at issue is capable of both a defamatory and nondefamatory meaning, there exists a question of fact for the jury.").

Indeed, recognizing the role of the jury, the U.S. Court of Appeals for the Ninth Circuit held:

> We must attempt to discharge our constitutional responsibility to protect First Amendment values without unduly trenching on the fact-finding role of the jury and trial judge. We are mindful that in New York Times, Bose, and Harte-Hands, the Supreme Court was fashioning a process for reviewing the evidence which permits judicial protection of First Amendment values while still paying due deference to the fact-finding role of juries, and particularly the jury's opportunity to observe the demeanor of the witnesses.

*Newton v. National Broadcasting Co.*, 930 F.2d 662, 672 (9th Cir. 1990). A jury should determine whether Defendants-Appellees are credible. Importantly, the U.S. Court of Appeals for the District of Columbia Circuit has held, "the bald statement '[Plaintiff] is a liar,' for example, would plainly fall within the class of factual defamatory statements." *Moldea v. New York Times Co.*, 15 F.3d 1137, 1144 (D.C. Cir. 1994) (rev'd on other grounds en banc).

### 2.    The Statements Were Actionable As a Matter of Law

*See* Section I(C) below.

### C.    <u>Defamation by Implication.</u>

A statement can be defamatory either because of what is expressly stated or because of an implied meaning. Defamation by implication "stems not from what is literally stated, but from what is implied." *White*, 909 F.2d at 518). "[A]s a

defamatory statement may be made in indirect terms or by insinuation, the publication thereof must be construed as a whole. In doing so, the courts will not hunt for a strained construction in order to hold the words used as being defamatory." *S. Business Machs v. Norwest Fin. Leasing*, 390 S.E.2d 402, 409 (Ga. Ct. App. 1990).

Here, Defendant-Appellee committed defamation by implication when, as one example, she responded "no" when asked if she told the parents of the fallen heroes their death was caused by a film. Compl. at ¶ 23(a). While she did not expressly use the word "liar", Defendant-Appellee's statement would lead the viewer to draw one conclusion – that she was accusing Plaintiffs-Appellants of lying. *See Memphis Publishing Co. v. Nichols*, 569 S.W.2d 412 (Tenn. 1978); see also R. SACK, LMEsL, SLANDER, AND RELATED PROBLEMS, 50-51 (contending that a statement suggesting that a man and a woman, each married to other people, "spent a night together in a hotel room, will be interpreted as an assertion that the pair engaged in sexual activities, because the average reader will assume that 'they saith not a pater noster there.'" (footnote omitted)).

Indeed, Plaintiffs-Appellants had made public statements detailing what Defendant-Appellee had told them about the cause of the Benghazi Attack at Joint Base Andrews during their encounter. Now, by directly contradicting and denying that she had made those statements, regardless of the specific verbiage used, could

16

only possibly lead to one conclusion – that she was accusing Plaintiffs-Appellants of lying to discredit them. This renders the District Court's finding that she "did not refer to plaintiffs as liars," Mem. Op. at 24, inapposite and therefore should be overturned by this Court, since defamation by implication "stems not from what is literally stated, **but from what is implied**. District of Columbia law clearly contemplates the possibility that a defamatory inference may be derived from a factually accurate news report." *White*, 909 F.2d at 518 (emphasis added). Again, "if the language at issue is 'capable of both a defamatory and nondefamatory meaning, there exists a question of fact for the jury.'" *Dunn,* 833 F.2d at 449.

Defendant-Appellee ran a presidential campaign during this time. Obviously, Defendant-Appellee, a politically shrewd individual, knew that she could not simply come out and directly use the word "liar" to describe the parent's who lost their beloved sons on her watch during the Benghazi Attack. However, Defendant-Appellee still needed to discredit Plaintiffs in order to avoid yet another controversy and salvage her presidential aspirations. Thus, the fact that she couches the defamatory statements in expressions of sympathy, as this District Court noted, and as Defendant-Appellee repeatedly and politically pointed out publically and in the District Court pleadings, does nothing to change the bottom line – which is that her statements unequivocally portray Plaintiffs as liars. Clearly,

17

one can at least appear to be politically sympathetic, while still calling someone a liar. The two are not mutually exclusive.

The same argument applies for Defendant-Appellee Clinton's December 30, 2015 statement, where she is asked, "Somebody is lying. Who is it?" Compl. at ¶ 23(b). Defendant-Appellee's response – "not me, that's all I can tell you" – again leaves the viewer with one possible conclusion: that Plaintiffs are lying. Similarly, the statement Defendant-Appellee made in response to Plaintiff-Appellant Smith's allegation against her is "she's wrong. She's absolutely wrong" Compl. at ¶ 2, leaves only one conclusion to the viewer. Again, whether Defendant-Appellee Clinton attempted to politically couch her statements in expressions of sympathy is irrelevant, since the defamatory accusations of lying are nonetheless published.

The District Court also mistakenly dismissed Plaintiffs-Appellants' false light claim on the basis that the statements at issue "did not portray plaintiffs as 'odious, infamous, or ridiculous.'" Mem. Op. at 27; *Jankovic*, 494 F.3d at 1091, and would not be highly offensive to a reasonable person. But, "[a] 'false light claim . . . only requires a showing of: (1) publicity; (2) about a false statement, representation or imputation; (3) understood to be of and concerning the plaintiff; and (4) which places the plaintiff in a false light that would be offensive to a reasonable person.'" *Doe v. Bernabei & Wachtel*, PLLC, 116 A.3d 1262, 1267 (D.C. 2015) quoting *Bean v. Gutierrez*, 980 A.2d 1090, 1094 (D.C. 2009). Here,

Defendant-Appellee published the false statements and imputations about Plaintiffs-Appellants (known to be about Plaintiffs-Appellants) and a reasonable person in the same or similar circumstance would be highly offended.

To have the former U.S. Secretary of State and then private citizen campaign on the premise that the grieving parents of dead heroes – heroes who worked for her and who she had control over – are not honest and indeed lied about what took place at a meeting just days after the Benghazi Attack – make Plaintiffs-Appellants appear highly volatile, unreasonable, illogical, delusional and otherwise "odious, infamous, or ridiculous." *Jankovic*, 494 F.3d at 1091.

## II.  THE DISTRICT COURT ERRED WHEN IT FOUND THAT PLAINTIFFS-APPELLANTS FAILED TO STATE A PLAUSIBLE CLAIM FOR RELIEF FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BECAUSE DEFENDANT-APPELLEE CLINTON'S CONDUCT RISES TO THE LEVEL OF OUTRAGEOUS AND EXTREME.

The District Court's finding that Defendant-Appellee Clinton's defamatory statements "[do] not rise to the level of being 'utterly intolerable in a civilized community'" is misguided and must be reversed. *Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013), quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 n.10 (D.C. 1994). "To succeed on a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Armstrong*, 80 A.3d at 189.

19

When Defendant-Appellee took on the parents of men who died in the Benghazi Attack by publicly calling them liars, that in and of itself rises to the level of "extreme" and "outrageous." Moreover, that Defendant-Appellee Clinton couched her accusations in purported expressions of sympathy does not render her conduct not "extreme" or "outrageous." At the time she made these statements, Defendant-Appellee was amidst her presidential campaign. Her accusations that Plaintiffs-Appellants were lying were clearly intended to cover up her own wrongful actions during the Benghazi Attack and to attempt to destroy Plaintiffs-Appellants' credibility in the public eye in order to bolster her chances of winning the presidential election.

Thus, even assuming that Defendant-Appellee Clinton did politically couch her accusations in supposed expressions of sympathy, the bottom line remains unchanged. Plaintiffs-Appellants are the Gold Star parents of fallen American heroes who lost their lives during the night of the Benghazi Attack. Immediately after experiencing this life-shattering tragedy, Plaintiffs-Appellants are falsely told by Defendant-Appellee Clinton that the deaths of their sons was caused by a reaction to an Internet video criticizing the "prophet" Muhammad, and that the creator of the video would be punished. As it turned out, however, Defendant-Appellee knew almost immediately that the Benghazi Attack had nothing to do with the Internet video, but was instead a planned, premeditated terrorist attack.

Compl. at ¶ 24; *see also* Diary entry of Charles Woods taken contemporaneously with meeting with Defendant-Appellee Clinton, App. __.

As reports of Defendant-Appellee's knowledge of the cause of the Benghazi Attack filtered out, and Plaintiffs-Appellants were cast into the public eye as a result of the tragic loss of their sons and Defendant-Appellee's false explanation as to the cause of their deaths, Defendant-Appellee Clinton – adding insult to injury – engaged in a campaign to further her presidential ambitions and aspirations of smearing Plaintiffs-Appellants by calling them liars in order to attempt to salvage her presidential campaign. Considering that Plaintiffs-Appellants had just suffered through the deaths of their sons, Defendant-Appellee Clinton's efforts to further minimize the deaths and paint Plaintiffs-Appellants as liars for speaking out on the truth in order to protect her own interests are nothing short of "outrageous" and "extreme."

## III. THE DISTRICT COURT ERRED WHEN IT FOUND THAT THE WESTFALL ACT APPLIED TO DEFENDANT-APPELLEE BECAUSE SHE ACTED OUTSIDE THE SCOPE OF HER EMPLOYMENT WHEN SHE USED A PRIVATE, PERSONAL EMAIL SERVER TO TRANSMIT INFORMATION THAT DIRECTLY LED TO THE DEATHS OF PLAINTIFFS-APPELLANTS SONS.

The Westfall Act does not apply to Defendant-Appellee because maintaining a secret, private email server was not within the scope of her employment as U.S. Secretary of State. The Westfall Act, codified at 28 U.S.C. § 2679(d), was enacted

21

in response to the U.S. Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292 (1988), which "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). "When a federal employee is sued for wrongful or negligent conduct," the Attorney General or his delegate may certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." Osborn, 549 U.S. at 229-30, quoting 28 U.S.C. § 2679(d)(1)-(2). "Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as the defendant in place of the employee." *Id*. at 230.

In support of Defendant-Appellees contention that she is absolutely immune for her misconduct, the United States set forth the Certification of the Director of the Torts Branch, Civil Division, U.S. Department of Justice (James G. Touhey, Jr.). Importantly, however, Mr. Touhey's certification is not dispositive. "[T]he government's certification is not conclusive because it is the Court that makes the final determination as to the scope of employment issue." *Kalil v. Johanns*, 407 F. Supp. 94, 97 (D.D.C. 2005). The U.S. Supreme Court has expressly recognized the conflicts of interest that arise should such certification not be subject to judicial review. *See Gutierrez De Martinez v. Lamagno*, 515 U.S. 417, 436 (U.S. 1995) ("The local United States Attorney, whose conflict of interest is apparent, would be

authorized to make final and binding decisions insulating both the United States and federal employees like Lamagno from liability while depriving plaintiffs of potentially meritorious tort claims."). *Id*. The Court in Gutierrez therefore held that the scope of employment certifications are subject to judicial review. *Id*. at most, Mr. Touhey's certification amounts to a prima facie effect. *Kimbro v. Velten*, 30 F.3d 1501 (D.C. Cir. 1994). If Plaintiffs "allege sufficient facts that, taken as true, establish that the defendants' actions exceeded the scope of their employment," *Kalil*, 407 F. Supp. 2d at 99, Plaintiffs-Appellants must be afforded the opportunity to take discovery. The certification itself does not have any particular evidentiary weight. *Kimbro*, 30 F.3d at 1501.

The District of Columbia courts routinely "look[] to the Restatement (Second) of Agency" in determining whether an employee's actions fall within the scope of employment. *Rasul v. Myers*, 512 F.3d 644, 655 (D.C. Cir. 2008).

> The Restatement provides [that]: '(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master[;] and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master. (2) **Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master**.

*Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 663 (D.C. Cir. 2006) (per curiam) (quoting Restatement (Second) of Agency § 228 (1958)) (emphasis

23

added). The District Court erred when it found that Defendant-Appellee acted in the scope of her employment by using a secret, private and unauthorized email server. By its very nature, the use of a private email server to send and receive emails (personal, business or otherwise) falls outside the scope of her duties as U.S. Secretary of State. The U.S. Department of State's own rules clearly and unequivocally provide that:

> It is the Department's general policy that normal day-to-day operations be conducted on an authorized [Automated Information System], which hast he proper level of security control to provide nonrepudiation, authentication and encryption, to ensure confidentiality, integrity, and availability of the resident information.

Josh Gerstein, *Clinton Private Email Violated "Clear-Cut" State Dept. Rules*, Politico, March 5, 2015. The District Court cannot contend that Defendant-Appellee Clinton's violation of U.S. Department of State's own rules was done within the scope of her employment. Indeed, "conduct of a servant is not within the scope of employment if it is different in kind from that authorized." Restatement (Second) of Agency § 228 (1958). The point of any organization establishing internal rules and procedures is for its employees to follow them – attempts to skirt such rules cannot be said to be done in the course of employment. In fact, the failure to use an authorized Automated Information System was not the only rule Defendant-Appellee chose to ignore. She also retained agency records after departing office, which runs afoul of 36 C.F.R. § 1222.24, which states, "Departing

officials and employees [may] not remove Federal records from agency custody."
Lachlan Markay, *Five State Department Rules That Hillary's Email Practices
Violated*, Free Beacon, May 26, 2016. "[Defendant-Appellee] Clinton didn't just
retain records after leaving the State Department; those records were never in the
department's possession in the first place." *Id*. Additionally, Defendant-Appellee's
conduct violated yet another U.S. Department of State rule mandating preservation
of federal records from loss or destruction. "All state department employees are . .
. required by law to preserve documentary materials meeting the definition of a
record under the Federal Records Act [and are] responsible for creating, using,
maintaining, preserving, and disposing of the Department's information and
records." *Id*. Defendant-Appellee's blatant disregard for her own former
employer's rules and procedures cannot be held to be done within the scope of her
employment. Such a holding would contravene logic.

  Moreover, using a private email server to send and receive classified
information, including information that directly led to the Benghazi Attack, is not
the kind of work Defendant-Appellee Clinton was employed to perform. Indeed,
the extensive investigation into her alleged wrongdoing by the Federal Bureau of
Investigation ("FBI") is dispositive evidence. Finally, Defendant-Appellee's use of
a private email server in no way was possibly done for the purpose of serving her
employer. Clearly, the U.S. government stands to benefit in no way from the

transmission of top-secret, confidential, and classified information via an unsecured private email server. Defendant-Appellee Clinton's use of a private email server was done to serve her own personal interest, against U.S. Department of State's protocol, rules, and regulations, including attempting to stonewall valid Freedom of Information Act ("FOIA") requests into Defendant-Appellee's various dealings with secretly doing business for her private foundation, the Clinton Foundation.

Furthermore, this Court has held that criminal conduct generally falls outside the scope of employment. "In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered: . . . whether or not the act is seriously criminal." *Rasul*, 512 F.3d at 659 (internal quotations omitted). "If conduct is seriously criminal, the Restatement explains that it is generally less likely that the conduct comes within the scope of employment." *Id*. at 660. Here, leading experts in the legal field, such as former U.S. Attorney General Michael Mukasey, have publicly stated that criminal charges were justified for Defendant-Appellee Clinton's wrongful acts.[2] Former Associate Attorney General Rudy Giuilani spoke of "16 crimes he believes

---

[2] Michael Mukasey, *Clinton's Emails: A Criminal Charge is Justified*, Wall Street Journal, Jan. 21, 2016, available at: https://www.wsj.com/articles/clintons-emails-a-criminal-charge-is-justified-1453419158.

the evidence suggests [Defendant-Appellee Clinton] is already guilty of," including (1) 18 U.S.C. § 201 (bribery); (2) 18 U.S.C. § 208 (acts affecting a personal financial interest); (3) 18 U.S.C. § 371 (conspiracy); (4) 18 U.S.C. § 1001 (false statements); (5) 18 U.S.C. § 1341 (frauds and swindles); (6) 18 U.S.C. § 1343 (fraud by wire); (7) 18 U.S.C. § 1349 (attempt and conspiracy to commit fraud); (8) 18 U.S.C. § 1505 (obstruction of justice); (9) 18 U.S.C. § 1519 (destruction [alteration or falsification] of records in federal investigations and/or bankruptcy); (10) 18 U.S.C. § 1621 (perjury); (11) 18 U.S.C. § 1905 (disclosure of confidential information); (12) 18 U.S.C. § 1924 (unauthorized removal and retention of classified documents or material); (13) 18 U.S.C. § 2071 (concealment [removal or mutilation] of government records); (14) 18 U.S.C. § 7201 (attempt to evade or defeat a tax [use of Clinton Foundation funds for personal or political purposes]); (15) 18 U.S.C. § 7212 (attempts to interfere with administration of internal revenue laws).[3] Even the former Director of the FBI, James Comey, publicly stated that Defendant-Appellee Clinton was "extremely careless in [her] handling of very sensitive, highly classified information."[4] It is therefore evident

---

[3] TruthFeed News, *Rudy Giuliani Believes Hillary Is Guilty of These 16 Crimes*, TruthFeed, October 29, 2016, available at: http://truthfeed.com/rudy-giuliani-believes-hillary-is-guilty-of-these-16-crimes/32605/.

[4] Statement by FBI Director James B. Comey on the Investigation of Secretary Hillary Clinton's Use of a Personal E-Mail System, FBI, July 5, 2016, available at: https://www.fbi.gov/news/pressrel/press-releases/statement-by-fbi-director-james-

that Defendant-Appellee Clinton acted in a criminal fashion, and the reason she has not been charged to date is political. In fact, Judge Andrew Napolitano publicly stated, "It is well known that the FBI agents on the ground, the human being who did the investigative work, had built an extremely strong case against Hillary Clinton and were furious when the case did not move forward . . . [t]hey believe the decision not to prosecute came from the White House."[5] This, however, does not change the fact that Defendant-Appellee's actions were criminal, and therefore clearly outside the scope of her employment.

As such, and pursuant to case law and the Restatement, Defendant-Appellee Clinton was not acting within the scope of her employment as U.S. Secretary of State when she sent and received top-secret, confidential, and classified emails using her personal, private email server and therefore the Westfall Act does not apply. At a minimum, Plaintiffs-Appellants pled more than adequate facts to entitle them to conduct discovery and uncover additional evidence to demonstrate that Defendant-Appellee was only acting to server her own, self-preservation interests

---

b-comey-on-the-investigation-of-secretary-hillary-clinton2019s-use-of-a-personal-e-mail-system.

[5] Matt Zimmerman, Adam Housley, *FBI, DOJ roiled by Comey, Lynch Decision to Let Clinton Slide by on Emails, Says Insider*, Fox News, October 13, 2016, available at: http://www.foxnews.com/politics/2016/10/13/fbi-doj-roiled-by-comey-lynch-decision-to-let-clinton-slide-by-on-emails-says-insider.html.

when she chose to transmit matters of national security using her personal, private email server.

## **CONCLUSION**

For the foregoing reasons, the District Court's decision should be reversed, and Plaintiffs-Appellants awarded costs. The District Court erred by dismissing Plaintiffs-Appellants' claims of defamation, false light, and intentional infliction of emotional distress, as well as the wrongful death and negligence claims. Plaintiffs-Appellants respectfully request this Court to vacate the dismissal of the Complaint and remand this case for further proceedings and trial on the merits. No one is or should be above the law.

Plaintiffs-Appellants respectfully request oral argument.

Dated: September 28, 2017                Respectfully Submitted,


/s/ Larry Klayman_____

Larry Klayman, Esq.
Klayman Law Group, P.A.
2020 Pennsylvania Ave. N.W.
Suite 800
Washington, D.C. 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

*Attorney for Plaintiffs-Appellants*

## **CERTIFICATE OF COMPLIANCE**

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 6,518 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 15.28 in 14-point Times New Roman.

Dated: September 27, 2017                    /s/ Larry Klayman_____

30

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically and served through the court's ECF system to all counsel of record or parties listed below on September 28, 2017.

/s/ Larry Klayman_____